FEDERAL SAVINGS AND LOAN IN-SURANCE CORPORATION, as Receiv-er for FirstSouth, F.A., Plaintiff and Counter-defendant,

v.

W. Robert SMITH, Defendant, Counter-plaintiff and Third–Party Plaintiff,

v.

Rod BEASON, Third–Party Defendant.

No. LR–C–88–555.

United States District Court, E.D. Arkansas, W.D.

June 28, 1989.

Colette J. Winston, Dept. of Justice, Torts Branch, Civ. Div., Washington, D.C., for counter-defendant.

Dan Parker, Eichenbaum Firm, Little Rock, Ark., for plaintiff.

Jake Lutz, Huggins & Associates, Memphis, Cyril Hollingsworth, Little Rock, Ark., for Robert W. Smith.

Philip Kaplan, Little Rock, Ark., for Rod Beason.

## ORDER

EISELE, Chief Judge.

Plaintiff Federal Savings and Loan Insurance Corp. ("FSLIC"), receiver for FirstSouth, F.A., brought this action to collect a note allegedly due FirstSouth from defendant W. Robert Smith. Mr. Smith has filed claims against several others, including the United States of America, challenging their conduct in connection with the execution of the note. The United States has moved to dismiss Mr. Smith's action against it for lack of subject matter jurisdiction in this Court and for failure to state a claim upon which relief can be granted.

## FACTUAL ALLEGATIONS

FSLIC claims that Mr. Smith owes First-South $494,125.00 plus interest pursuant to a note attached to its complaint. Complaint, para. 7. Mr. Smith admits signing the note, but denies that there exists a valid debt between himself and FirstSouth. Answer, para. 3, 7. Furthermore, Mr. Smith alleges that he was fraudulently induced to sign the note. Specifically, he claims that two individuals who were stockholders in FirstSouth approached him and persuaded him to purchase FirstSouth stock, with the purchase financed by the proceeds of the note on which FSLIC now sues. Answer, para. 8. Mr. Smith also says that, unbeknownst to him, FirstSouth was an institution on the verge of collapse and the stock sale to him constituted a scheme to defraud in violation of federal and state law. Id.

Mr. Smith's Third–Party Complaint is based on the same factual allegations as the fraud affirmative defense, summarized above. Third–Party Complaint, para. 18–27, 32, 34. The relevant averments for our purposes here are in paragraphs 28 through 31. Mr. Smith alleges that the FSLIC recognized that FirstSouth was having difficulties and that FSLIC became increasingly involved in FirstSouth's day-to-day operations. Para. 28. Ultimately, it is alleged, FSLIC decided that FirstSouth's largest stockholders should divest themselves of sufficient stock to bring First-South into compliance with applicable regulations. Para. 29. FSLIC enforced its desires by threatening to institute cease and desist proceedings. Id. FSLIC asserted a right to specifically approve the sales which occurred. Id. The key paragraph in the Third–Party Complaint is number 30, echoed in paragraphs 40 and 41. These key averments are as follows:

> By requiring that FirstSouth's large shareholders divest themselves of their stock, the FSLIC substituted its judgment for the judgment of the FirstSouth

Board of Directors. Furthermore, as a consequence of these demands and its insistence on approval of stock sales transactions, the FSLIC assumed a duty that it did not otherwise have to purchasers and potential purchasers of First South stock to assure that such sales of stock would comply with applicable state and federal securities laws.

The United States has moved to dismiss this action on the grounds that this Court lacks jurisdiction over the subject matter, Fed.R.Civ.P. 12(b)(1), and that the complaint fails to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). The jurisdictional challenge asserts that the Third Party Complaint does not contain a sufficient statement of the grounds upon which the court's jurisdiction depends, Fed. R.Civ.P. 8(a)(1). The assertion that no claim is stated is evaluated under the standard of *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957): "in appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Both grounds for dismissal rest on the United States' sovereign immunity and Mr. Smith's asserted failure to show that he may overcome that immunity.

## FEDERAL TORT CLAIMS ACT

### 1. Relevant Provisions.

The United States has sovereign immunity. Consequently, it can only be sued to the extent it has consented to be held liable, and only in the manner established by law. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Plaintiff can only pursue a tort claim against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq.[1]

---

1. Mr. Smith also attempts to proceed under the "sue and be sued" clause of 12 U.S.C. § 1725(c)(4). However, 28 U.S.C. § 2679(a) provides that "[t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title [i.e., the jurisdictional provision of FTCA], and the remedies provided by this title in such cases *shall be*

The heart of the FTCA is section 2674, which provides that:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances....

A plaintiff must usually exhaust an administrative procedure before pressing his claim against the United States:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.... The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

The Government relies upon two of the exceptions to the FTCA's waiver of sovereign immunity. Section 2680 provides in pertinent part that:

The provisions of this chapter and section 1346(b) of this title shall not apply to:

(a) Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

(h) Any claim arising out of ... misrepresentation, [or] deceit.

## 2. Does FTCA Bar Mr. Smith's Claims?

a. *Recoupment.* Mr. Smith argues that the FSLIC has filed suit against him and has thereby exposed itself and the United States to a claim for recoupment. It is conceded that if Mr. Smith's claim against the United States is for recoupment, then neither sovereign immunity nor the FTCA is any bar to that claim. *United States v. Johnson*, 853 F.2d 619 (8th Cir. 1988); *Frederick v. United States*, 386 F.2d 481, 486–90 (5th Cir.1967).

■ Recoupment may be succinctly defined as "the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to the plaintiff's claim." *FDIC v. Corning Savings and Loan Assoc.*, 696 F.Supp. 1245, 1247 (E.D. Ark.1988). The Court can see a colorable argument that Mr. Smith's claim arises out of the same transaction as the note on which FSLIC sues, if the relevant "transaction or occurrence" is defined to include the alleged scheme to dupe Mr. Smith into borrowing the money in order to buy stock. That theory might at least be sufficient to get plaintiff past the motion to dismiss stage if the other requirements for a valid recoupment claim were met. However, Mr. Smith does not assert a recoupment claim because he does not wish to assert an affirmative defense to bar the *plaintiff's* recovery. The plaintiff here is the FSLIC (acting as receiver for FirstSouth). The United States is not the same entity as the FSLIC, and it is not the plaintiff in this

---

*exclusive"* (emphasis added). *See Peak v. Small Business Administration*, 660 F.2d 375, 377–8 (8th Cir.1981). Nothing in *Franchise Tax Board of California v. United States Postal Service*, 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984), or the other cases cited by Mr. Smith casts the slightest doubt on earlier cases construing this plainly worded statute. *See, e.g., Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538, 543–4 (9th Cir.1987), accepting the holding in *FDIC v. Citizens Bank & Trust*, 592 F.2d 364 (7th Cir.1979) cert. denied 444 U.S. 829, 100 S.Ct. 56, 62

L.Ed.2d 37 (1979), that the FTCA withdrew the "sue-and-be-sued" liability of the FDIC with respect to claims both covered and excluded by the Act. *Franchise Tax* involved a state garnishment action against the Postal Service, which is not an action sounding in tort and which is not "cognizable under section 1346(b)." Nor does it make any difference that Mr. Smith asserts his claims in a so-called "third party complaint" rather than in an original complaint. Section 2679(a) applies to "suits" on "claims," which is what Mr. Smith seeks to bring here.

action. *FSLIC v. Williams*, 599 F.Supp. 1184, 1202–4 (D.Md.1984).[2]

■ b. *Administrative claim.* Section 2675(a) creates a jurisdictional prerequisite that any claim under FTCA first be filed with the agency within two years of the injury. *Wollman v. Gross*, 637 F.2d 544, 547 (8th Cir.1980) cert. denied 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981). It is undisputed that no such claim has ever been filed here and, on the face of the pleadings, it appears that the two year limitations period for making such a claim has expired.[3] 28 U.S.C. § 2401(b). Mr. Smith asserts that his claim against the United States is a third party complaint or a counterclaim, both of which are exempted from the administrative exhaustion requirements of section 2675(a).

Rule 14(a) of the Federal Rules of Civil Procedure allows a defendant to file a third party complaint against any party "not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." This Rule is most commonly used in cases of indemnity or contribution, though those are not the only theories which will support such a complaint.

■ Mr. Smith has not explained how the United States could possibly be liable to him for all or part of the FSLIC's claim against him. That claim is on a note. Under the plain language of the Rule, the United States would only be a proper third-party defendant if the United States could somehow be held liable to Mr. Smith for some part of the amount due on the note, assuming that Mr. Smith is ultimately adjudged to be liable thereon. The Court can conceive of no scenario suggested by the pleadings under which FSLIC could prevail on its claim against Mr. Smith and Mr. Smith could then have a valid claim over against the United States. If Mr. Smith's various defenses fail against the FSLIC, which would be a precondition to a finding of liability, then he will owe the money and the United States will not be required to reimburse him. On the other hand, if his defenses succeed, he will not owe the money and there will be nothing to reimburse. In short, at the risk of repetition, whether Mr. Smith wins or loses against the FSLIC, the United States will not owe him anything.

■ A counterclaim is a claim which the pleader has against an opposing party. Fed.R.Civ.P. 13(a) and (b). The United States is not a plaintiff in this case, so any claim Mr. Smith has against the United States is not a counterclaim.

Mr. Smith has not complied with the administrative exhaustion requirement of

---

2. Mr. Smith cannot be harmed by this rule, as any recoupment could only go to bar some or all of the recovery sought; it cannot be an affirmative basis for relief. The United States does not seek to recover any money from Mr. Smith, so there could be no award against which to recoup under any circumstances. *See Williams*, 599 F.Supp., at 1204 n. 23. (In fact, an alternative basis for the finding that Mr. Smith does not have a claim for recoupment is that any recovery under such a claim would be limited to zero dollars, the amount the United States seeks to recover.)

3. Mr. Smith alleges that the United States "has not shown that Smith knew or should have known more than two years ago that the FSLIC was a cause of his injury." Response, at 15. Failure to discover an injury at the time of occurrence is in the nature of an affirmative defense to a limitations claim. As a general rule, the claimant has the obligation to show some reason why a limitation apparent on the face of the pleadings does not apply. *See* Fed.R. Civ.P. 9(f) ("averments of time and place are material and shall be considered like all other

averments of material matter"). The defendant is not required to first come forward with facts showing that special factors do *not* apply. Nothing in the Third–Party Complaint or in any of Mr. Smith's filings shows facts which suggest such a reason. *In re Franklin National Bank Securities Litigation*, 449 F.Supp. 574 (E.D.N.Y. 1978) is not apposite because in that case the FDIC was acting as receiver for the bank which would properly have been the plaintiff against the government. 449 F.Supp., at 575–6. It was therefore unlikely that the bank would file an administrative claim for tort injury caused by the United States. Id. The language Mr. Smith quotes in his Response, at 15, only applies in the case where the government is the defendant and is also in control of the plaintiff, a circumstance not present in this case. Nothing prevented Mr. Smith from filing his administrative claim and, unlike *Franklin National Bank*, there is no explanation for the failure to do so timely. *See In re Franklin National Bank Securities Litigation*, 445 F.Supp. 723, 735–6 (E.D.N.Y.1978).

FTCA and it is now apparently too late to do so. He also has not brought a proper third-party complaint or counterclaim against the United States, so he may not evade the requirement under the exceptions which apply to those types of pleadings. This lack of compliance with the law's requirements is, in and of itself, sufficient to deprive this Court of jurisdiction.

c. *Discretionary act exception.* Under the "discretionary act" exception to FTCA, the United States is immune from any tort liability arising from "the exercise or performance or the failure to exercise or perform a discretionary function." 28 U.S.C. § 2680(a). The United States contends that the negligence allegation in the third-party complaint is really a claim that FSLIC abused its discretion. Such a claim would be barred by the exception.

The principle Supreme Court decision defining the discretionary act exception is *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (*"Varig"*); *see also, Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). There, the Court explained that:

The discretionary function exception ... marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.

467 U.S., at 808, 104 S.Ct., at 2762.

The Court quoted *Dalehite* that "the discretion protected by section 2680(a) [is] 'the discretion of the executive or the administrator to act according to one's judgment of the best course." Id., at 811, 104 S.Ct., at 2763. Furthermore,

the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of

government in accordance with official directions cannot be actionable.

Id., *quoting Dalehite*, 346 U.S., at 35–6, 73 S.Ct. at 968.

After reviewing the legislative and judicial materials bearing on the question, the Court offered the following guidance:

[I]t is unnecessary—and indeed impossible—to define with precision every contour of the discretionary function exception.... [I]t is possible to isolate several factors useful in determining when the acts of a Government employee are protected from liability by section 2680(a). First, it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.... Thus, the basic inquiry concerning the application of the discretionay function exception is whether the challenged acts of a Governmental employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability.

Second, whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as regulator of the conduct of private individuals.... This emphasis upon protection for regulatory activities suggests an underlying basis for the inclusion of an exception for discretionary functions in the Act: Congress wished to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

467 U.S., at 813–814, 104 S.Ct., at 2764 (footnotes omitted).

■ The Supreme Court's later decision in *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), though doctrinally an application of *Varig*, is instructive because it considered a variety of different types of conduct. The results as to the different types of activity help to clarify the distinction between what is and what is not discretionary action.

The *Berkovitz* Court did provide this additional description of the limitations of the exception:

the discretionary function will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect.

108 S.Ct., at 1958–9. Thus, the mere fact that government is engaged in regulation in a particular case does not create a *per se* exception. Id., at 1959–60.

Plaintiffs in *Berkovitz* sought to raise two claims against the government, both based on injuries allegedly caused by a vaccine sold under federal regulatory jurisdiction. First, plaintiffs claimed that a government agency had violated the governing statute and regulations in licensing the manufacturer to produce the vaccine. 108 S.Ct., at 1960. Second, plaintiffs alleged that another agency had violated federal regulations and policy in approving release of the particular lot of vaccine involved in plaintiffs' case. Id.

The Court found that the first claim, the licensing claim, at least partially stated a cause of action not barred by the discretionary function exception. This claim had two aspects. As to the first aspect, the applicable regulations required that no license be issued until certain data had been filed by the manufacturer, and the complaint alleged that the license had in fact been issued before the required information was filed. 108 S.Ct., at 1961–2. The discretionary function exception did not apply here because "the [agency] has no discretion to issue a license without first receiving the required test data; to do so would violate a specific statutory and regulatory directive." Id., at 1962.

The second aspect of the licensing claim was that the agency licensed the vaccine although the vaccine did not comply with certain of the regulatory safety standards. Id. If the allegation meant that the agency issued the license without making a determination that the vaccine complied with the standards, or if the agency made a determination that the vaccine did not comply and issued the license anyway, the discretionary function would not apply because the regulations required the agency to make a determination that the vaccine complied before issuing a license. Id. On the other hand, if the allegation meant that the agency had made the determination but that the determination was wrong, then the question would be "whether the manner and method of determining compliance with the safety standards at issue involves agency judgment of the kind protected by the discretionary function exception." Id., at 1963. The Court remanded for district court consideration of this issue.

The Court then turned to the second claim, that the decision to release a particular lot for sale was a discretionary function. The regulations pertaining to release of vaccine required the manufacturer to ensure that each lot complied with the relevant safety regulations. 108 S.Ct., at 1963. The government agency was allowed to examine any lot for non-compliance, but was not required to do so by the regulation. Id.

The regulations generally allow the [agency] to determine the appropriate manner in which to regulate the release of vaccine lots, rather than mandating certain actions. [Thus, the discretionary function exception] bars any claims that challenge the [agency's] formulation of policy as to the appropriate way in which to regulate the release of vaccine. In addition, if the policies and programs formulated by the [agency] allow room for implementing officials to make independent policy judgments, the discretionary function exception protects the acts taken by those officials in the exercise of this discretion. The discretionary function exception, however, does not apply if the acts complained of do not involve the permissible exercise of policy discretion. Thus, if the [agency's] policy leaves no room for an official to exercise policy judgment in performing a given act, or if

the act simply does not involve the exercise of such judgment, the discretionary function exception does not bar a claim that the act was negligent or wrongful.

108 S.Ct., at 1964 (citations omitted). Plaintiffs survived the government's motion to dismiss because they alleged that it was in fact agency policy to test all lots of vaccine for compliance with applicable regulations. Id.

The Eighth Circuit recently provided the following additional instruction for identifying a discretionary function: "Cases in this circuit have consistently held that the FTCA applies to decisions by federal agencies at the 'operational' level, whereas decisions or omissions on the 'policy or planning' level are exempt under the statute's discretionary function exception." *Gleason v. United States*, 857 F.2d 1208, 1209 (8th Cir.1988) (agency approval of plans for bridge was discretionary act when the government's sole concern was insuring a navigable waterway); *see also E. Ritter & Co. v. Department of the Army*, 874 F.2d 1236, 1240–42 (8th Cir.1989) (failure to maintain flood control ditch was ministerial and operational, not policy judgment); *Jurzec v. American Motors Corp.*, 856 F.2d 1116 (8th Cir.1988) (sufficiency of warning to purchasers of used jeeps was within agency's discretionary function); *Bacon v. United States*, 810 F.2d 827 (8th Cir.1987) (agency decision not to warn plaintiffs of dioxin contamination was within agency discretionary function); *Mandel v. United States*, 793 F.2d 964 (8th Cir.1986) (agency failure to comply with its own safety regulations was not within discretionary function); *Aslakson v. United States*, 790 F.2d 688 (8th Cir.1986) (agency failure to comply with safety regulations it had adopted was not within discretionary function); *McMichael v. United States*, 751 F.2d 303 (8th Cir.1985) (agency failure to enforce safety regulations contained in contract with contractor was not within discretionary function); *see generally Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1483–86 (5th Cir.1989) (thorough review of discretionary function exception).

We now turn to Mr. Smith's allegations in this case, bearing in mind the principles enunciated in the foregoing cases. He claims that the FSLIC required certain FirstSouth shareholders to sell their stock, and that the FSLIC "specifically approved" those sales. Third Party Complaint, para. 29. As a consequence, it allegedly incurred a duty to "assure that such sales of stock would comply with applicable state and federal securities laws." Id., at para. 40.

 The FSLIC is vested with great discretion in regulating the institutions under its jurisdiction. *See* 12 U.S.C. §§ 1464(a), 1726(b). The Court easily concludes that that discretion would reach the conduct described in Mr. Smith's third-party complaint, assuming at this stage of the case that the FSLIC did exactly what Mr. Smith alleges. Mr. Smith points to no statute, regulation, or policy which mandated the FSLIC to order the stock sale, to require approval of particular sales, or to approve or disapprove any such sales under one set of circumstances or another.[4]

---

4. Mr. Smith argues that a statute, regulation, or policy dictating the agency's course of action is not necessary—that common law tort duties can as well restrict agency discretion. Response, at 17. This rule, were it the law, would eviscerate the exception because it conflates the question of whether a particular act breaches a duty of care with the question of whether that act is immune from suit because of the status of the defendant. An agency exercising its discretion under a valid statute, regulation or policy is immune from tort liability, even if the same conduct would give rise to a common law cause of action under other circumstances. *See Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 692–3, 69 S.Ct. 1457, 1462–3, 93 L.Ed. 1628 (1949) (plaintiff's theory "confuses the doctrine of sovereign immunity with the

requirement that a plaintiff state a cause of action"); *cf. Dube v. Pittsburg Corning*, 870 F.2d 790 (1st Cir.1989) (trial court finds Navy negligently caused injury, but finds immunity based on discretionary function exception; court of appeals reverses on discretionary function holding). The relevant language from footnote 4 of *Berkovitz* is that the FTCA "is not intended to authorize a suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." 108 S.Ct., at 1960. In *Mandel*, liability (breach of duty of care) was predicated on negligent failure to warn, 793 F.2d, at 967. But what deprived the agency of the protection of the discretionary function exception (as opposed to

If the FSLIC had laid out standards which were to be invariably followed without exercise of policy judgment by the responsible employees, then the case would be different. It is not alleged that such binding standards existed. *Cf., e.g., United Air Lines v. Wiener,* 335 F.2d 379, 393–4 (9th Cir.) cert. dism'd 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964). It is not claimed that the FSLIC defrauded Mr. Smith, or that it made positive misrepresentations to him. The claim is instead that the FSLIC did not do as much as Mr. Smith thinks it should have to keep others from violating the securities laws or that it did not take sufficient steps to remedy incomplete disclosures by others. With no standards to guide it other than Mr. Smith's current dissatisfaction with the way his stock purchase turned out, this Court would be ill-equipped to decide that the FSLIC's conduct was inappropriate. These agency decisions are exactly the sorts of regulatory policy judgments which the discretionary function exception is intended to shield from judicial second-guessing.

d. *Misrepresentation and deceit exception.* The United States also alleges that Mr. Smith's claim is barred by the FTCA exception applicable to claims arising out of "misrepresentation [or] deceit." 28 U.S.C. § 2680(h). It is clear that Mr. Smith's claims against the individual defendants and against FirstSouth arise out of misrepresentation and deceit. *See* Count I (federal securities fraud); Count II (state securities fraud). The question is whether the negligence claim against the United States so arises.

The tortious conduct alleged against the United States in Count III of the third-party complaint is that FSLIC breached its duty "to assure that such sales of stock would comply with applicable state and federal securities laws, including ensuring that potential purchasers would be fully informed as to the true financial and regulatory situation of FirstSouth." Third–Party Complaint, paragraph 40. Again, Mr. Smith does not claim that the FSLIC affirmatively misled him; he alleges that it omitted to take steps which would have kept him from being misled. *See* Response, at 24.

The gravamen of the complaint is that facts were misrepresented to Mr. Smith. The alleged basis for government liability is that the FSLIC did not prevent those misrepresentations from occurring. Although the decision is not without some doubt, the Court concludes that Mr. Smith's claim against the United States arises from misrepresentations, and that it is barred by section 2680(h). In order to state a claim of the sort alleged against the United States, Mr. Smith must aver that FSLIC owed him a duty to disclose (or a duty to assure disclosure, which amounts to the same thing), that it breached that duty, and that Mr. Smith acted in reliance on the failure to disclose to his injury.[5]

---

what made the agency liable) was the fact that "[t]he conduct forming the basis of the [agency's] alleged negligence" was not a policy decision but was instead "the failure of Park Service personnel to comply with the previously adopted safety policy." 793 F.2d, at 967. The result in *Aslakson* rested on the same basis. 790 F.2d, at 692–3. Significantly, after finding that the discretionary act exception did not apply, the Court in that case remanded so that the agency's conduct could be "reviewed in accordance with North Dakota's tort law standards." 790 F.2d, at 694. The Court recognized that the question of whether the agency had violated any common law duty is distinct from the question of whether it may be sued for any such violations. *See also E. Ritter & Co.,* 874 F.2d at 1240, 1242 (separate discussion of "The Discretionary Function Exception" and "Negligence"); *McMichael,* 751 F.2d, at 305, 308 (separate discussions of "Discretionary Function Exception" and "Ac-

tionability Under Arkansas Law"). Unless the applicable state tort law imposes liability per se for harm caused by violation of a statute, regulation or policy, it is possible for an agency's actions to fall outside the discretionary function exception without the agency being liable in tort for its conduct. In other words agency action in violation of a common law duty gives plaintiff a sword, while the fact that the action was not an exercise of discretion deprives the agency of a shield.

5. It may seem paradoxical to talk of reliance on a failure to disclose, but the concept is a legal commonplace. *See, e.g.,* SEC Rule 10b–5(b), making it unlawful to "make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. 240, 10b–5; *Austin v. Lofts-*

These are the very elements of a misrepresentation claim.

■■■ Negligent misrepresentations, as well as actual deceit, fall within the misrepresentation exception. *United States v. Neustadt*, 366 U.S. 696, 702, 81 S.Ct. 1294, 1298, 6 L.Ed.2d 614 (1961). Omissions of relevant facts, as well as positive misstatements are included. Id., 366 U.S., at 708–9, 81 S.Ct. at 1301–02 (FHA failure to warn plaintiff of defects in house was negligent misrepresentation, excluded by § 2680(h)). This is not a case where the negligent failure to warn claim overlaps other tort claims, so that the plaintiff may proceed on those claims even though the failure to warn claim is barred. *See, e.g., Block v. Neal*, 460 U.S. 289, 297–8, 103 S.Ct. 1089, 1093–4, 75 L.Ed.2d 67 (1983) ("the Government's misstatements are not essential to plaintiff's negligence claim. . . . FmHA's duty to use due care to ensure that the builder adhere to previously approved plans and cure all defects before completing construction is distinct from any duty to use due care in communicating information to respondent. . . . Of course, *in the absence of the 'misrepresentation' exception to the Torts Claim Act, respondent could also have brought a claim for negligent misrepresentation to recover for any injury caused by her misplaced reliance on advice provided by FmHA officials*"); *United Air Lines*, 335 F.2d, at 398 ("Here, *the gravamen of the action is not misrepresentation* but the negligent performance of operational tasks, although such negligence consisted party of a failure of a duty to warn;" for a list of the acts of operational negligence found by the trial court, see 335 F.2d, at 388); *see generally, JM Mechanical Corp. v. United States*, 716 F.2d 190, 195 n. 1 (3d Cir.1983) (illus-

trating distinction). The only thing Mr. Smith complains of as to the United States is that the government did not take sufficient steps to warn him of the relevant facts or to see that he was so informed. Third–Party Complaint, para. 40, 41. Negligent failure to warn as asserted in the Third–Party Complaint is a form of negligent misrepresentation, and as such it may not be the basis of a tort claim against the United States.

■■■ e. *Absence of duty.* Finally, we come to the question of whether the United States owed Mr. Smith and other purchasers of FirstSouth stock a duty "to assure that such sales of stock would comply with applicable state and federal securities laws, including ensuring that potential purchasers be fully informed as to the true financial and regulatory situation of First-South." Third–Party Complaint, para. 40; *see also* Response, at 16. It is not denied that ordinarily the FSLIC is not liable to those injured by the actions of regulated institutions or the agents of those institutions. The regulatory authority of the FSLIC was created to allow the agency to protect its insurance funds, not to establish a deep pocket to reimburse those who would not have lost money had the agency taken greater steps to protect them. *First State Bank of Hudson County v. United States*, 599 F.2d 558, 563–4 (3d Cir.1979) cert. denied 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980). Thus, the FSLIC does not usually owe a duty of care to those in the position of Mr. Smith. Absent a duty, there can be no breach of duty and there can be no liability. *Cf. Palsgraf v. Long Island Railroad*, 248 N.Y. 339, 162 N.E. 99 (1928).

Mr. Smith relies on the so-called "Good Samaritan" doctrine, *Block*, 460 U.S., at

gaarden, 675 F.2d 168, 177–8 (8th Cir.1982) (discussing circumstances under which plaintiff may be proven to have relied on omissions); Answer, para. 8 ("failure to inform . . . constitutes a material misrepresentation"). In order to show harm, Mr. Smith must prove that he "relied" upon the government's failure to disclose, i.e., that he would have acted differently had the government made the allegedly required disclosures. This element of his claim cannot be avoided by claiming that "the govern-

ment failed to communicate any information at all," Response, at 22. *Ingham v. Eastern Air Lines*, 373 F.2d 227, 239 (2d Cir.) cert. denied 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967) ("a misrepresentation may result from the failure to provide information, as well as from providing information that is wrong"). Indeed, it was not the case that the government gave plaintiff no information at all in *Wiener*, 335 F.2d, at 385 (CAA cleared jetliner for flight in accordance with flight plan).

294 n. 3, 103 S.Ct., at 1092 n. 3, that one who undertakes a duty not otherwise imposed upon him must use proper care in performing a duty he voluntarily undertakes. *See Haralson v. Jones Truck Line,* 223 Ark. 813, 270 S.W.2d 892 (1954) *citing Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922); Prosser and Keaton, *The Law of Torts,* 378 (5th ed. 1984) ("The result of all this is that the good Samaritan who tries to help may find himself mulcted in damages, while the priest and the Levite who pass by on the other side go on their cheerful way rejoicing"). The question is, then, whether Mr. Smith has pleaded a claim sufficient to show that the United States has assumed a duty to him of the sort alleged.

▮ The Court finds that the allegations in the complaint do not make out a valid claim for damages arising from the FSLIC's negligence. All that is alleged is that the FSLIC directed certain individuals to sell their FirstSouth stock and that the FSLIC exercised a right to approve the sales.[6] Logically, the sole concern of the FSLIC in making such approvals would be whether the sales as executed were consistent with the FSLIC's regulatory mandate. It is not contended that the FSLIC sold Mr. Smith the stock or that it set out to trap him and made intentional misrepresentations to him. It is not contended that the FSLIC made representations to Mr. Smith that the stock sale would be carried out in accordance with applicable securities laws or that FSLIC approval manifested an agency promise that those laws had been obeyed. Doubtless it is not permitted that the person who engages in an undertaking is solely allowed to define the reach of his potential liability. But Mr. Smith makes no showing in logic or precedent why the FSLIC's insistence on the stock sale and its assertion of a power of approval, both steps apparently undertaken by the agency as exercises of its regulatory power and for the achievement of its regulatory purposes, obligate the FSLIC to guarantee to Mr. Smith that those who sold to him would comply with relevant statutes. In short, nothing Mr. Smith says the FSLIC did creates the duty alleged to have arisen in paragraphs 40 and 41 of the Third–Party Complaint.[7]

IT IS THEREFORE ORDERED that the motion to dismiss of third-party defendant United States be, and it is hereby, GRANTED.

---

6. In *Franklin,* 449 F.Supp. 574, the FDIC had additional duties because it was managing the bank and therefore owed the duties of a manager to the concerned parties. But even if the FDIC was fulfilling the same role in this case, it would not owe Mr. Smith a duty to protect him in his purchases of stock, any more than would the board of directors owe such a duty if they had merely advocated the sale.

7. The Court is not basing its ruling on the "regulatory functions" exception urged by the FSLIC. *See Berkovitz,* 108 S.Ct., at 1959–60. Of course, no one else is regulating the savings and loan industry, but that does not mean that no one else could ever play a role analogous to that played by the agency in the transaction alleged to have defrauded Mr. Smith. The Court can readily imagine private actors with greater or lesser degrees of authority taking steps to have large stockholders dispose of their stock to disinterested persons. If we include other forms of businesses than banks, we may think of directors, other stockholders, officers, private insurance companies, accountants, inside and outside counsel, consultants, bankruptcy trustees, receivers, and doubtless others who might be in a position to press for such sales. *See, e.g.,* Third–Party Complaint, para. 30 ("By requiring that FirstSouth's large shareholders divest themselves of their stock, the FSLIC substituted its judgment for the judgment of the FirstSouth Board of Directors.") The Court concludes that the United States is not liable not because the United States is different from all these in taking that action, but because it is similar. Mr. Smith points to no precedent for the proposition that one who urges or even precipitates sales of this nature is thereby liable if the seller violates the securities laws.