**Michael MANDEL, Appellee,**

v.

**UNITED STATES of America, Appellant.**

No. 85–1367.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1985.

Decided June 25, 1986.

William G. Cole, Dept. of Justice, Washington, D.C., for appellant.

Robert C. Compton, El Dorado, Ark., for appellee.

Before ARNOLD and WOLLMAN, Circuit Judges, and GUNN,* District Judge.

WOLLMAN, Circuit Judge.

The United States appeals from a judgment awarding appellee, Michael Mandel, $928,193.58. We affirm.

* The HONORABLE GEORGE F. GUNN, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. On August 20, 1980, defendant Boy Scouts of America was dismissed from the action and Mandel was allowed to directly proceed against defendant Insurance Company of North America, pursuant to Ark.Stat.Ann. § 66–3240.

On August 1, 1978, Michael Mandel was permanently paralyzed when he dived into a swimming hole in the Buffalo River and struck his head on a submerged rock. The swimming hole, known as Mud Cave, is located on property known as Camp Orr. At the time of the accident, Camp Orr was owned by the Boy Scouts of America (it has since been acquired by the National Park Service).

Mandel brought suit for damages against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), and the Boy Scouts of America and its insurer, Insurance Company of North America, alleging that defendants were negligent in failing to warn him of subsurface rocks in the Buffalo River. Defendants [1] moved for summary judgment, each denying ownership of the riverbed where the accident took place. The district court declined to reach the question of ownership, instead holding that defendants' liability was limited by the Arkansas Recreational Use Statute [2] to "willful and malicious" conduct and that the undisputed facts of this case foreclosed the possibility that defendants had acted in this manner. *Mandel v. United States*, 545 F.Supp. 907, 914 (W.D.Ark.1982). We affirmed the summary judgment in favor of Insurance Company of North America. We reversed the summary judgment in favor of the United States and remanded the case to the district court, holding that an inference could be drawn from the evidence when viewed in a light most favorable to plaintiff, that the National Park Service had acted willfully and maliciously. *Mandel v. United States*, 719 F.2d 963, 968 (8th Cir.1983).[3]

On remand, it was determined that the United States did not in fact own the riverbed at Mud Cave. Accordingly, the district court ruled that the Arkansas Recrea-

2. Ark.Stat.Ann Sections 50–1101 to 50–1107.

3. We agreed with the district court that the Arkansas Recreational Use Statute is applicable to the United States as landowner in relation to a national park. 719 F.2d at 966.

tional Use Statute could not be invoked by the United States since the statute applies only to the owner of the land where the accident occurred.[4] The case then proceeded to trial. The district court found the United States liable for Mandel's injuries, concluding that the National Park Service had failed to exercise ordinary care in not warning Mandel of the presence of submerged rocks in the Buffalo River, including that portion of the river flowing through Camp Orr.

The United States contends on appeal that it had no legal duty to warn Mandel of the danger of diving into those parts of the river located on privately owned property, and that if it had a duty to warn, its failure to do so was not the proximate cause of Mandel's injuries. Additionally, the United States argues that Mandel's action is barred by exceptions to the FTCA.

## I.

The Buffalo National River is part of the national park system and was established in 1972 to preserve a 130 mile long, scenic, natural, free-flowing river in northern Arkansas. As of 1978, almost 60,000 acres bordering the Buffalo River had been acquired by the Park Service, while 35,000 acres, including Camp Orr, remained in private hands.

At the time he was injured, Michael Mandel was twenty-two years old and employed as a camp counselor by the St. Louis Jewish Community Center Association. He first visited Buffalo River National Park (the park) on Memorial Day weekend in May of 1978. He was accompanied by three other camp counselors, Billy Chase, Brian Spector, and Eddie Adler. The four were acquainting themselves with the park in preparation for future camping trips to the area.

Mandel next returned to the park on the weekend of July 4, 1978, along with Adler, Spector, several other camp counselors, and thirty to forty young teenagers. The group set up camp at a primitive camping area in the park known as Kyle's Landing. Shortly after their arrival, Mandel and Adler were approached by a National Park Service ranger. Mandel testified that he asked the ranger where his group could go swimming, whereupon the ranger directed them to a nearby swimming hole—Mud Cave—saying, "That's where everybody goes. That's where we recommend for you to go." Throughout the July 4th weekend, Mandel and several members of his camping expedition swam at Mud Cave without incident.

On August 1, 1978, Mandel returned to the Kyle's Landing area with a second group of teenagers from St. Louis. Together with counselors Chris Kirby and Stuart Ollanik, Mandel arrived at Kyle's Landing ahead of the others. The three unloaded a van filled with supplies and proceeded to Mud Cave for a swim. All three men climbed a large rock located several feet from the bank of the river. Kirby and Ollanik dived from the rock into the swimming hole. They encouraged Mandel to do the same. When Mandel dived into the water he struck his head on a rock submerged four or five feet beneath the surface and broke his neck. As a result, he is a quadriplegic.

The evidence shows that Mud Cave was freely accessible from the park. There were no visible physical indications that Mud Cave was part of Camp Orr and not a part of the park. Mandel testified that because the ranger recommended Mud Cave he assumed it was part of the park. He also testified that the ranger's recommendation made him feel "secure in that area."

Three park rangers went to Mud Cave on the day following Mandel's accident and, without notifying the Boy Scouts, conducted an investigation. Before leaving the area, one of the rangers shot down a rope swing that extended over the swimming hole.

The record shows that the Park Service actively and voluntarily solicited informa-

---

**4.** Arkansas Recreational Use Statute, Ark.Stat. Ann. § 50–1102 provides in part:

(b) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

tional inquiries from its patrons concerning the entire river, and not just that portion of the river flowing through the park. Visitors to the park were encouraged to "ask a ranger" any questions about the river.

It is undisputed that the Park Service did not know of the particular rock at Mud Cave. The district court found, however, that the Park Service knew generally that the Buffalo River was laced with submerged rocks. A Park Service brochure warned of the danger of submerged rocks, stating that "rocks are harder than heads," and the Park Service had erected a warning sign against diving at one location on the river where a fatality had occurred. There was testimony from a Park Service ranger and a Park Service employee indicating that they were aware of submerged rocks strewn throughout the river. Moreover, in the two weeks preceding Mandel's mishap at least two accidents involving submerged rocks occurred on the Buffalo River, resulting in the death of one man and serious injury to another.

The district court found that the National Park Service provided general services and exercised authority over the entire river, including the parts flowing through private property. The district court also found that there were no warning signs posted at the Kyle's Landing area nor on the access roads leading from the park to Mud Cave. It is undisputed that Mud Cave was a very popular swimming area.

Based on these findings, the district court concluded that the National Park Service was negligent in failing to warn Mandel of the dangers of submerged rocks in the river, grounding its holding on the ranger's failure to couple his recommendation with a warning and on the National Park Service's failure to post warning signs at either the Kyle's Landing area or adjacent to the roadways leading from the park to Mud Cave.

## II.

■ The United States contends that Mandel's suit is barred by the "misrepresentation" and "discretionary function" exceptions to the FTCA, 28 U.S.C. §§ 2680(h) and (a).

Mandel's suit is not based on a misrepresentation theory. He does not claim that he acted in reliance on a false statement. Rather, he asserts that the Park Service failed to act—to warn—when it had a legal duty to do so. Section 2680(h) of the FTCA "does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty." *Block v. Neal*, 460 U.S. 289, 297, 103 S.Ct. 1089, 1093, 75 L.Ed.2d 67 (1983). That duty in Mandel's case was the duty to warn of the hazards of swimming at Mud Cave. Thus the misrepresentation exception is not applicable.

■ The United States argues with little conviction that the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), also bars Mandel's suit. We do not agree.

A panel of this court recently discussed in detail the nature and scope of the discretionary function exception to the FTCA. *Aslakson v. United States*, 790 F.2d 688 (8th Cir. 1986). The court held that the discretionary function exception does not apply to governmental conduct that involves the execution of a previously adopted safety policy that is neither regulatory in nature nor in the nature of administrative decision-making grounded in social, economic, or political policy. *Id.*, 790 F.2d at 693.

We believe that the same considerations that governed the court's decision in *Aslakson* apply in the instant case. The conduct forming the basis of the Park Service's alleged negligence was not the decision to institute a policy of warning park users of the hazards of boating on and swimming in the Buffalo River, but rather was the failure of Park Service personnel to comply with the previously adopted safety policy.

Additionally, we note that decisions on the policy or planning level are generally protected by the discretionary exception, whereas decisions made at the operational level are not. *Bergmann v. United States*, 689 F.2d 789, 791 (8th Cir.1982), citing *Indian Towing Co. v. United States*, 350

U.S. 61, 76, 76 S.Ct. 122, 130, 100 L.Ed. 48 (1953). Though distinguishing between the two levels of governmental action is not always easy, *United States v. S.A. Empresa De Viacao Aerea Rio Grandense,* 467 U.S. 797, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984), citing *Dalehite v. United States,* 346 U.S. 15, at 35–36, 73 S.Ct. 956 at 967–68, 97 L.Ed. 1427 it is clear that the conduct complained of in this case involves operational level negligence at best. *Ducey v. United States,* 713 F.2d 504, 515 (9th Cir.1983) ("The judgment and decision-making involved in day-to-day management of a recreational area are not the sort of decision-making contemplated by the exemption.")

For the foregoing reasons we conclude that the discretionary function exception stands as no barrier to Mandel's suit.

### III.

Whether the National Park Service had a legal duty to warn Mandel that there might be submerged rocks in the swimming hole is a closer question.

■ The government's liability in actions brought under the Federal Tort Claims Act is determined in accordance with the law of the place where the act or omission occurred. 28 U.S.C. 1346(b); *Bergmann v. United States,* 689 F.2d 789, 792 (8th Cir.1982); *Hungate v. United States,* 626 F.2d 60, 61 (8th Cir.1980). As a general proposition, there is no duty to warn of hazards on another's property. Under Arkansas law, however, "One who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Haralson v. Jones Truck Line,* 223 Ark. 813, 270 S.W.2d 892, 895 (1954). We agree with the district court that once the Park Service chose to furnish its patrons with information about the entire Buffalo River, it had a concomitant duty to exercise reasonable care in doing so notwithstanding the private ownership of portions of the adjoining land.

■ We also agree with the district court that reasonable care in this case included the duty of warning of submerged rocks in the river. The Park Service was on notice that submerged rocks posed a threat to those diving in the river. Though the Park Service ranger who recommended Mud Cave to Mandel did so prior to the time of the two July accidents, it is not unreasonable to assume that he knew or should have known of those dangers outlined in the Park Service's brochures.

Whether ordinary care was exercised in a given case depends upon the circumstances. *Fleming v. Wal-Mart, Inc.,* 595 S.W.2d 241, 253 (Ark.App.1980). We conclude that the circumstances of this case support the district court's determination that the Park Service failed to exercise ordinary care. Indeed, in view of our decision in the first appeal that plaintiff's allegations raised a question of fact on the issue of wilful or malicious conduct by the United States, a ruling to the contrary is all but foreclosed.

■ On the question of proximate cause, the United States argues that the ranger who recommended Mud Cave to Mandel could not have foreseen that one month later Mandel would have been injured while diving there. The ranger's conduct was not the only basis for the district court's imposition of liability, however. The district court also cited the Park Service's failure to post warnings as constituting negligence under the circumstances. The district court found that the two acts of negligence, when considered together, were the proximate cause of Mandel's injuries.

In Arkansas, proximate cause is generally defined as "a cause from which a person of ordinary experience and sagacity could foresee that the result would probably ensue." *Ben M. Hogen & Co. v. Fletcher,* 236 S.W.2d 801, 370 S.W.2d 801 (1963) (citations omitted). The question ordinarily is for the trier of fact. There is no question but that Mandel chose to swim at Mud Cave based on the ranger's recommendation. We cannot quarrel with the district court's observation that had some visible warnings been posted at the Kyle's Landing area, Mandel would not have gone swimming at Mud Cave. The facts as found by the district court thus support the

conclusion that the conduct of the ranger and the Park Service was responsible for Mandel's injuries.

### IV.

■ The government's final contention is that the district court erred in allocating seventy-five percent of the fault for Mandel's accident to the United States and only twenty-five percent to Mandel himself. Apportionment of fault under Arkansas' comparative fault statute, Ark.Stat.Ann. § 27–1765, is a matter within the province of the finder of fact, *Scoville v. Missouri Pacific Railroad*, 458 F.2d 639, 647 (8th Cir.1972), and thus subject to review by this court under the clearly erroneous standard. We find no clear error in the district court's application of the statute to these facts and therefore decline to set aside its apportionment of the negligence.

The judgment is affirmed.

Skopil, Circuit Judge, and Enright, District Judge, sitting by designation, filed opinions concurring in part and dissenting in part.