David KIEHN, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 91–4114.

United States Court of Appeals,
Tenth Circuit.

Jan. 28, 1993.

E.W. Pike (Peter Stirba of Stirba & Hathaway, Salt Lake City, UT, with him on the briefs), of Anderson, Pike & Bush, Idaho Falls, ID, for plaintiff-appellant.

Carlie Christensen (David J. Jordan, U.S. Atty., with her on the brief), Asst. U.S. Atty., Salt Lake City, UT, for defendant-appellee.

Before BRORBY, SETH, and EBEL, Circuit Judges.

BRORBY, Circuit Judge.

David Kiehn, the Appellant, brought a negligence action against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680 (1988 & Supp. II 1990), for personal injuries sustained when he fell from a cliff in Dinosaur National Monument. Kiehn appeals the district court's ruling which dismissed his negligent failure to warn claim for lack of subject matter jurisdiction. Kiehn also appeals the district court's finding that the government's negligent rescue effort on his behalf was not a proximate cause of his injuries. For the reasons stated below, we affirm the district court's ruling in part and reverse in part, holding that under the discretionary function exception of the FTCA, we lack subject matter jurisdiction over both the negligent failure to warn claim and the negligent rescue claim.

I

The material facts of this case are largely undisputed. David Kiehn was employed by Hatch River Expeditions (Hatch) to lead commercial rafting trips on the Green River in Dinosaur National Monument. Hatch was a National Park Service (NPS) concessionaire, paying a fee to the NPS to allow it to take patrons rafting through Dinosaur National Monument.

On June 22, 1985, while taking a group of Hatch customers on a rafting trip, David Kiehn beached the rafts and led the rafting party on a short hike to a rock formation to view Indian petroglyphs. The petroglyphs were near Little Rainbow Park, a remote area of Dinosaur National Monument. While climbing up the face of the sandstone formation, David Kiehn fell approximately eight, to ten feet into a crevice, landing on the back of his head, neck and shoulders.[1]

Kiehn suffered a serious head injury in the fall. Two of the rafters, Mike Gibbons and R.J. Stephenson, went for help while Richard Fisher, a Hatch rafting guide and licensed emergency medical technician (EMT), attempted to stabilize Kiehn. Gibbons hailed a rafting party on the river, urgently explaining the accident and necessity of contacting a park ranger. The rafting party continued downstream where it met Ranger Van Cott who they informed of the accident. The time was approximately 12:20 p.m., roughly twenty minutes after the accident.

Ranger Van Cott made radio contact with Ranger Ricketts who then went to the accident scene to investigate. Upon arrival at the scene, Ranger Ricketts determined that emergency air evacuation was necessary. Via radio contact with Park Headquarters, an Air Life helicopter was summoned from St. Mary's Hospital in Grand Junction, Colorado, at approximately 2:00 p.m. Ranger Close, an EMT, was sent by Park Headquarters to the accident site in order to assist with the evacuation.

The helicopter arrived at approximately 3:00 p.m., at which time Kiehn was secured to a backboard and lowered from the rock ledge. In an effort to reduce potential brain swelling due to the head injury, Nurse Bagshaw, who accompanied the Air Life helicopter, administered Decadron to Kiehn. The helicopter left the accident scene at approximately 4:15 p.m.. Shortly before the helicopter landed at the hospital, Kiehn suffered a ventricular tachycardiac dysrhythmia caused by brain stem herniation which resulted from swelling of the brain. Although emergency neurosurgery saved Kiehn's life, he suffered some permanent brain damage due to the brain stem herniation.

Kiehn filed a negligence action against the United States in the United States District Court for the District of Utah under the FTCA. Kiehn alleged that the United States was negligent in failing to warn Kiehn of the unstable condition of sandstone rock formations and negligent in its rescue effort. The United States filed a Fed.R.Civ.P. 12(b)(1) motion to dismiss both claims for lack of subject matter jurisdiction. The district court dismissed the failure to warn claim for lack of subject matter jurisdiction based upon both the discretionary function exception of the FTCA and the Utah Limitation of Landowner Liability Act, Utah Code Ann. §§ 57–14–1 through 57–14–7 (1953). It did not, however, dismiss the negligent rescue claim, concluding instead that: (1) the NPS owed Kiehn a duty to provide rescue services based upon terms set forth in the concession permit; and (2) "[o]nce such responsibility was assumed, the government undertook a duty to perform those services in a non-negligent manner."

At trial, the district court found the government negligent for failing to provide a backboard to the accident scene in a timely manner. By 1:00 p.m., District Ranger Wieszczyk at Park Headquarters knew of the emergency and that a backboard was

---

1. The record and oral argument before this court indicate that Kiehn followed a trail to the rock formation but the trail ended before reaching the petroglyphs. Kiehn decided to climb up the face of the rock formation rather than take an alternate route to the petroglyphs that did not require climbing the rock face.

recommended, but failed to send an available backboard and also failed to immediately dispatch Ranger Close who was an EMT. The court determined that this negligence delayed Kiehn's arrival to the hospital. If a backboard had arrived sooner, Kiehn could have been readied for evacuation, thus reducing the time that the helicopter waited on the ground while Kiehn was prepared for his evacuation.

The district court concluded, however, that NPS negligence was not the proximate cause of Kiehn's injuries. Kiehn "failed to provide evidence to establish that an earlier arrival at the hospital could have prevented the [brain stem] herniation and averted permanent brain damage," thus the court entered judgment in favor of the government.

Kiehn appeals alleging the trial court erred in granting the government's motion to dismiss the negligent failure to warn claim and appeals the court's decision regarding lack of proximate cause. The government contends that the district court lacked subject matter jurisdiction for both the negligent failure to warn claim and the negligent manner of rescue claim. The government further contends that if subject matter jurisdiction does exist for the negligent rescue claim, the government did not breach a duty of care and if negligence by the government is found, that negligence was not the proximate cause of Kiehn's injuries.

## II

■ Subject matter jurisdiction under the FTCA for both the failure to warn claim and the negligent rescue claim is a threshold jurisdictional question which must be resolved before addressing the merits of Kiehn's allegations. *Johnson v. United States, Dep't of Interior*, 949 F.2d 332, 335 (10th Cir.1991). This matter is subject to de novo review. *Daniels v.*

*United States*, 967 F.2d 1463, 1464 (10th Cir.1992).

The FTCA waives the federal government's sovereign immunity when United States employees are negligent in the scope of employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). This broad waiver of sovereign immunity is limited by the discretionary function exception which states that the waiver of immunity does not apply to "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a *discretionary function or duty* on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (emphasis added). The question before this court is the scope of the discretionary function exception.[2]

In determining the scope of the discretionary function exception, the Tenth Circuit applies the two-step test set forth by the Supreme Court in *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). *See, e.g., Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1537–38 (10th Cir.1992); *Johnson*, 949 F.2d at 336; *Zumwalt v. United States*, 928 F.2d 951, 953 (10th Cir.1991); *Boyd v. United States ex rel. U.S. Army, Corps of Eng'rs*, 881 F.2d 895, 897 (10th Cir.1989). The first step of the *Berkovitz* test requires this court to determine whether the challenged conduct "involves an element of judgment or choice," in which case it is discretionary and falls within the language of the exception, or whether it involves "a federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow," in which case the exception does not apply. *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958.

2. This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 2761–62, 81 L.Ed.2d 660 (1984). We have deemed it appropriate to interpret exceptions to the FTCA narrowly. *Miller v. United States*, 710 F.2d 656, 662 (10th Cir.), *cert. denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983); *see Dalehite v. United States*, 346 U.S. 15, 31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953).

If the conduct involves discretionary judgment under the first step of *Berkovitz*, then we must apply the second step, which requires this court to "determine whether that judgment is the kind that the discretionary function exception was designed to shield." *Id.* The exception protects only those discretionary actions or decisions which are "based on considerations of public policy." *Id.* at 537, 108 S.Ct. at 1959. The purpose is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 536–37, 108 S.Ct. at 1959 (quoting *Varig Airlines*, 467 U.S. at 814, 104 S.Ct. at 2765).

#### A.

We will first analyze Kiehn's failure to warn claim under the *Berkovitz* test to determine whether the claim meets the discretionary function exception to the FTCA's waiver of sovereign immunity.

The decision whether or not to post warning signs at Dinosaur National Monument is clearly discretionary as it "involves an element of judgment or choice." There is no statute, regulation or agency policy requiring the NPS to warn visitors of potential dangers, or more specifically, requiring the NPS to place signs which warn people that scaling sandstone cliffs may be dangerous. In fact, the only NPS policy referred to in the record indicates that signs should "minimally intrude upon the natural or historic setting," apparently leaving the application of this policy to NPS discretion. United States Dept. of the Interior National Park Service, *Management Policies*, Ch. 9:11 (Dec. 1988). Therefore, nothing directed NPS's decision concerning the type or manner of warnings to provide. *Compare with Zumwalt*, 928 F.2d at 954 (where general guidelines in the Park Service Management Policies was deemed to allow Park Service discretion in implementing safety improvements). Without evidence in the record that Dinosaur National Monument followed some policy or statutory directive on warning signs, there is nothing to indicate that the deci-

sion not to place warnings near the petroglyphs was anything but discretionary. This satisfies the first prong of *Berkovitz*.

The next question under the *Berkovitz* analysis is whether the decision not to place warnings at the petroglyphs was based on considerations of public policy. Kiehn argues that the government's failure to warn him of dangers after encouraging him to take customers to the petroglyphs does not implicate social, economic or political policy judgment and, therefore, we should follow the Tenth Circuit decision in *Boyd* by holding that the failure to warn claim is not barred by the discretionary function exception of the FTCA. We disagree.

In *Boyd*, the plaintiff's husband was snorkeling in a reservoir when he was struck and killed by a motor boat. The plaintiff sued the United States Army Corps of Engineers who had control over the reservoir, claiming that the United States negligently "failed to warn swimmers that boats were permitted in the area." *Boyd*, 881 F.2d at 896. This court held that although it was a discretionary decision by the Army Corps to not zone this area of the lake and leave its use unrestricted, the "failure to warn swimmers of dangerous conditions in a popular swimming area does not implicate any social, economic, or political policy judgments with which the discretionary function exception properly is concerned." *Id.* at 898.

Although *Boyd* is similar to the case at hand in some respects, it does not stand for the proposition that all failure to warn claims are outside the scope of the discretionary function exception. *Zumwalt*, 928 F.2d at 955. Instead, the *Berkovitz* test requires this court to determine whether the government's failure to warn was part of a policy decision. In this determination, we find the *Zumwalt* and *Johnson* decisions persuasive.

In *Johnson*, Ben Johnson was hiking a nontechnical route in Grand Teton National Park when he got lost and wandered into difficult terrain. In attempting a descent, Johnson fell and suffered serious injuries. Before Johnson could be rescued he died on

the mountain from hypothermia. One of the claims brought against the United States was that the government failed to warn Johnson of the dangers involved in climbing mountains. This court held that unlike *Boyd,* "the record here indicates the Park Service's decision not to place additional warnings in the Teton Range, whether explicit or implicit, was part of the overall policy decision to limit governmental regulation of climbing...." *Johnson,* 949 F.2d at 338. Since the overall decision to minimally regulate climbing was a discretionary policy decision, the component decision to not post warnings was also protected by the discretionary function exception. *Id.*

Similarly, in *Zumwalt* this court held that the discretionary function exception barred a negligent failure to warn claim against the United States. The plaintiff in *Zumwalt* was injured when he fell into an unmarked cave near the Balconies Cave Trail in Pinnacles National Monument. In reaching our holding, we found "the absence of warning signs was part of the overall policy decision to maintain the Trail in its wilderness state ... [and by] choosing to mark the Trail and place warnings in a corresponding pamphlet, [the NPS] undertook a balancing of social, economic, and political policies." *Zumwalt,* 928 F.2d at 955. "The decision to leave the Trail in its wild state, whether explicit or implicit, related directly to the overall scheme set out in the Management policies" which provided for hands-off administration of wilderness areas to protect their "primeval character." *Id.* at 955, 953 n. 3. As in

*Johnson,* the decision not to post warnings was a component of a larger policy decision which was protected by the discretionary function exception. *Id.* at 955.

The present case is similar to *Johnson* and *Zumwalt,* in that the "decision not to place additional warnings [at the petroglyph site], whether explicit or implicit, was part of the overall policy" objective set forth in the NPS Management Policies of carefully using signs so as to minimize their intrusion upon the area's natural and historic setting.[3] *Johnson,* 949 F.2d at 338; *see Zumwalt,* 928 F.2d at 955. The NPS Management Policies are strengthened by "the fundamental purpose of ... monuments ... [which] is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C. § 1 (1988). Therefore, the NPS decision not to place warning signs at the petroglyphs was a component of an overall policy decision to protect the area's natural scenery.

The facts that justified the result in *Boyd* are not present in this case. In *Boyd,* the Army Corps' failure to warn swimmers of known dangerous conditions at a popular swimming locale was not part of the policy decision to leave the area unzoned and its use unrestricted. In fact there were no public policy considerations involved in *Boyd* that would support the government's decision not to warn swimmers.[4]

*Management Policies* at Ch. 9:11.

3. The NPS Management Policy on signs states as follows:

Signs will be carefully planned and designed to fulfill their important role in conveying an appropriate park image and in providing information and orientation to visitors. Each park will have an approved park-wide sign plan that will establish criteria based on that park's unique resources and values. Entrance and other key signs will be distinctively designed to reflect the character of the park.

Signs will be held to the minimum number, size, and wording required to serve their intended functions, so as to minimally intrude upon the natural or historic setting. They will be placed where they do not interfere with park visitors' enjoyment and appreciation of park resources....

4. Although not addressed by the parties, *Smith v. United States,* 546 F.2d 872 (10th Cir.1976), is another Tenth Circuit opinion which found that a negligent failure to warn claim did not meet the discretionary function exception. In *Smith,* as in *Boyd,* the failure to warn was not part of a larger policy objective and the circumstances were such that it would be difficult to understand what policy factors could have been considered in choosing not to warn the public. The record in *Smith,* in fact, showed the decision not to warn was "not related to any policy decision, but to [a perceived] lack of need for warning there." *Id.* at 877 n. 5.

The decision not to post warning signs in remote areas of a national monument inherently requires a balancing of public policy objectives, such as resource allocation, visitor safety and scenic preservation.[5] Rather than spoil the land's natural scenery with numerous warning signs, the NPS chose to have its permitted concessionaires warn employees and customers of potential hazards such as climbing rock formations. This court will not second-guess the NPS's decision to play an unobtrusive role in dispensing warnings by leaving the task to its permittee.[6] Under the circumstances of this case, we will not assume a nonpolicy decision unless the record shows something to the contrary. *See, e.g., Johnson,* 949 F.2d at 338; *Weiss v. United States,* 889 F.2d 937, 939–40 (10th Cir.1989). As recently stated by the Supreme Court,

> [w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.

*Gaubert,* — U.S. at — – —, 111 S.Ct. at 1274–75 (1991). Kiehn has not overcome this presumption.[7]

The lack of record evidence describing an analysis of public policy factors in the NPS decision not to post warnings is immaterial. This court has previously held that it is unnecessary for government employees to make an actual "conscious decision" regarding policy factors. *Johnson,* 949 F.2d at 339. In fact, we have found it "irrelevant whether the alleged failure to warn was a matter of 'deliberate choice,' or a mere oversight." *Allen v. United States,* 816 F.2d 1417, 1422 n. 5 (10th Cir.1987), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 694, 98 L.Ed.2d 647 (1988). The failure to consider some or all critical aspects of a discretionary judgment does not make that judgment less discretionary and does not make the judgment subject to liability.

Kiehn relies upon *Mandel v. United States,* 793 F.2d 964 (8th Cir.1986), to support his argument that once the NPS recommended the petroglyphs as an area of interest, NPS had a duty to warn which was nondiscretionary.[8] We reject Kiehn's argument and find *Mandel* a narrow holding and distinguishable from the present case.

In *Mandel,* park rangers recommended a swimming hole to the plaintiff. When the plaintiff dove into the river, he struck his head on a submerged rock and broke his

---

**5.** In contrast, "[o]rdinary discretion, such as that exercised by a government agent in driving his automobile 'on a mission connected with his official duties,' is not the kind of discretion that the exception was designed to shield." *Daigle,* 972 F.2d at 1538 (quoting *United States v. Gaubert,* — U.S. —, — , 111 S.Ct. 1267, 1275, 113 L.Ed.2d 335 (1991)).

**6.** In *King v. United States Forest Service,* 647 F.Supp. 20, 21 (N.D.Cal.1986), with facts similar to the present case, the district court held that it was a "policy decision [for the Forest Service] to leave warnings and other public informational tasks to its permittee." Plaintiffs failure to warn claim was, therefore, dismissed under the discretionary function exception. *See also Taylor v. United States,* 668 F.Supp. 1302, 1304 (W.D.Mo.1987).

**7.** The Ninth Circuit recently addressed the burden of persuasion in FTCA cases, holding that

while the "plaintiff bears the burden of persuading the court that it has subject matter jurisdiction under the FTCA's general waiver of immunity[,] . . . the burden of proving the exception [to the FTCA] lies with the government." *Prescott v. United States,* 973 F.2d 696, 701 (9th Cir.1992). While the reasoning of *Prescott* may be suspect in light of *Gaubert,* it does not alter our results since under *Prescott,* a plaintiff's claim must be facially outside the discretionary function exception to survive a motion to dismiss and Kiehn does not satisfy that burden. *Prescott,* 973 F.2d at 701–02; *see Daigle,* 972 F.2d at 1542 n. 11.

**8.** The NPS recommended visits to the petroglyphs by taking Kiehn to the petroglyph site during an orientation trip. Furthermore, the Operation Standards of the Concession Permit between the NPS and Hatch requires Hatch to provide "education and information services" and specifically refers to "interpretive hikes and talks."

neck. The park rangers knew the river had submerged rocks and several people had been killed or injured diving into the river. The Eighth Circuit found that the NPS violated its own safety policy, and had a duty to warn the plaintiff. *Id.* at 967–68.

Unlike *Mandel*, no legal duty to warn arose in the present case by encouraging Kiehn to visit the petroglyphs. It was not foreseeable that Kiehn would choose to climb the rock face rather than take the safer route which was available. Nothing in the record indicates the government suggested that Kiehn take the route he did. The risks Kiehn took when he decided to climb the rock formation were inherent and obvious. We will not hold that by merely encouraging the visitation of a site, the government somehow made its decision on posting warnings any less discretionary. The United States often encourages individuals to visit areas of interest which lie within federal lands and we will not use this as the sole basis for tort liability. Furthermore, the district court found that the NPS delegated the responsibility to warn to its concessionaires, and the record shows that Hatch warned its employees not to climb rock formations.

In sum, we affirm the district court's holding that Kiehn's failure to warn claim falls within the discretionary function exception of the FTCA. Therefore, we dismiss the claim for lack of subject matter jurisdiction. Since our decision is based upon interpretation of federal law, it is unnecessary for this court to interpret the Utah Limitation of Landowner Liability Act which the district court also utilized in reaching its decision.

### B.

■ We next address the negligent manner of rescue claim to determine whether subject matter jurisdiction exists under the FTCA. Once again, this requires application of the two-part *Berkovitz* test. After reviewing the record, we hold that the decision to render emergency aid was not discretionary, but the manner in which aid was rendered involved the type of discretionary decisions protected by the FTCA.

The decision whether to render emergency assistance when NPS employees learned of Kiehn's accident was not a matter of judgment or choice. Under the terms of the Concession Permit's Operation Plan, the NPS agreed to render such service if needed.[9] Furthermore, an Emergency Medical Services Guideline discussed in the record provides that the NPS "will provide a level of emergency medical services commensurate with the area needs." Thus, it was not within the discretion of Dinosaur National Monument employees to decide whether or not to provide emergency assistance to Kiehn after his accident. The decision was required by contract and by NPS guidelines. If Kiehn's claim was that the NPS was negligent in failing to provide emergency medical service, then clearly his claim would not be barred by the discretionary function exception.

The analysis must continue, however, because Kiehn's negligence claim is not based upon whether a rescue took place, but is based upon the manner in which the rescue was conducted.[10] Thus the threshold question becomes whether the government's method of rescue is protected by the discretionary function exception.

It is uncontroverted that there are no standards for the Dinosaur National Monument employees to follow in this instance. In *Barton v. United States*, 609 F.2d 977, 979 (10th Cir.1979), we held that "if a government official in performing his statutory duties must act without reliance upon a

---

9. The Operation Standards of the Concession Permit contains a clause which states that "[i]n the event of an emergency requiring helicopter or other types of evacuation, arrangements will be made for the rescue service by Dinosaur National Monument and the concessioner shall assume financial responsibility for said rescue."

10. The district court took a different view and held that "[o]nce such responsibility [to render rescue services] was assumed, the government undertook a duty to perform those services in a non-negligent manner." By reaching this conclusion, the district court avoided the issue of whether the manner of rescue was discretionary, and instead, undertook a negligence analysis.

fixed or readily ascertainable standard, the decision he makes is discretionary and within the exception of the Tort Claims Act." *See also Johnson,* 949 F.2d at 338; *Miller,* 710 F.2d at 656. As in the above cases, Dinosaur National Monument employees were performing their duty without guidance from any "ascertainable standard." [11] This court will not impose a standard of "reasonable care" upon Dinosaur National Monument employees once it is determined that they were required to act. Such an imposition would result in trying the United States for negligence without first addressing the threshold question of whether the decisions made during the rescue operation are protected under the discretionary function exception.

Our decision that the manner of rescue was discretionary is in line with the Supreme Court decision in *Varig Airlines.* In *Varig Airlines,* plaintiffs brought a FTCA action against the Federal Aviation Administration (FAA) for negligently implementing a safety design certification program after certified planes caught on fire during flight. The Supreme Court found that acts by FAA employees in executing the certification program according to FAA directives were protected by the discretionary function exception since the employees were empowered to make judgments. *Varig Airlines,* 467 U.S. at 820, 104 S.Ct. at 2768. The *Varig Airlines* decision reconfirmed an earlier Supreme Court opinion which held "that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." *Dalehite,* 346 U.S. at 36, 73 S.Ct. at 968; *see Varig Airlines,* 467 U.S. at 811–13, 104 S.Ct. at 2763–64. Not unlike *Varig Airlines,* Dinosaur National Monument employees in the present case were executing an emergency evacuation as required and making discretionary decisions in the process. This was simply not a case where the acts and decisions by Dinosaur National Monument personnel were mandated by regulatory directive and thus not discretionary. *See Berkovitz,* 486 U.S. at 542–43, 108 S.Ct. at 1961–62.

It is not enough that the rescue operation involved discretionary judgment; the second step of the *Berkovitz* analysis requires us to determine whether that judgment was grounded in social, economic, or political policy.

We are aided again in our analysis by *Johnson,* which had facts similar to the present case. In *Johnson,* one of the plaintiff's claims was that the NPS was negligent in its response to a mountain climbing accident. In applying the second prong of *Berkovitz,* this court found that a search and rescue decision "inherently involves the balancing of safety objectives against such practical considerations as staffing, funding and minimizing government intrusion." *Johnson,* 949 F.2d at 339.

As in *Johnson,* emergency rescue operations at Dinosaur National Monument naturally involve considerations of public policy. Limited staff and financial resources requires an assessment of each situation as it arises, balancing the potential need for assistance with the resources available. Rangers make split-second policy judgments in handling emergencies and in directing an organized response. A review of the record indicates numerous instances where decisions made by rangers after learning of the accident were probably based upon consideration of such factors as limited personnel and resources, difficulty in communicating with the accident site, lack of knowledge on the specifics of the accident, the remoteness of the accident site and numerous other potential factors upon which we will not speculate. The fact that an emergency air evacuation was not ordered sooner or that in hind sight a backboard should have been sent to the accident site is irrelevant. It is not the court's role to second guess the discretionary decisions of federal employees when such decisions

---

11. Not unlike *Daigle,* 972 F.2d at 30, and *Allen,* 816 F.2d at 1421, Kiehn is principally arguing that the park rangers "could have done a better job" (emphasis added) in rescuing him after the accident, but Kiehn fails to show that the rangers contravened a statutory, policy, or regulatory directive.

necessarily take into account a myriad of potential policy factors.[12]

Unlike *Johnson,* the record in this case does not contain any evidence that the park rangers actually based their decisions upon any policy considerations. But as we stated earlier, it is not necessary that such policy factors be consciously weighed in making discretionary decisions. *See, e.g., Johnson,* 949 F.2d at 339.

Even if park rangers were negligent in their decisions during the emergency rescue, our analysis would not change. "Factual issues concerning negligence are irrelevant to the threshold issue whether the officials' actions are shielded from liability by the discretionary function exception." *Johnson,* 949 F.2d at 340. "The discretionary function applies even when the discretionary acts themselves constitute negligence." *Flynn v. United States,* 902 F.2d 1524, 1530 (10th Cir.1990); *see also Daniels,* 967 F.2d at 1465; *Allen,* 816 F.2d at 1421; *Barnson v. United States,* 816 F.2d 549, 553 (10th Cir.), *cert. denied,* 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987). This may seem like a harsh result to Kiehn, but a plaintiff may only sue the United States government when sovereign immunity does not bar the claim. Congress waived sovereign immunity when it implemented the FTCA and allowed plaintiffs to bring tort actions against the United States, but in doing so, Congress expressly protected discretionary acts and decisions "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

It is the holding of this court that Kiehn's claim of negligence in the government's rescue operation is barred by the discretionary function exception of the FTCA. Since we lack subject matter jurisdiction over this claim, it is not necessary for us to review issues of negligence or proximate cause.

In conclusion, we AFFIRM the district court order dismissing Kiehn's failure to warn claim for lack of subject matter jurisdiction based upon the discretionary func-

tion exception of the FTCA. We REVERSE the district court on the negligent manner of rescue claim, holding that the claim should have been dismissed for lack of subject matter jurisdiction based on the discretionary function exception of the FTCA.

---

**12.** Nothing in the record rebuts the presumption that under circumstances such as this, the government's actions and decisions were grounded in policy. *See Gaubert,* —— U.S. at —— – ——, 111 S.Ct. at 1274–75.