Domingo ARAGON, et al., Plaintiffs,

v.

UNITED STATES of America,
et al., Defendants.

No. CIV 94–592 JP/LCS.

United States District Court,
D. New Mexico.

Dec. 27, 1996.

Gary A. O'Dea, Albuquerque, NM, Dick A. Blenden, Carlsbad, NM, Jeanne C. Muniz, Albuquerque, NM, for Plaintiffs.

John W. Zavitz, U.S. Attorney's Office, Albuquerque, NM, J. Charles Kruse, U.S. Department of Justice, Torts Branch, Civil Division, Ben Franklin Station, Washington, DC, S. Michael Scadron, Daniel C. Cox, U.S. Department of Justice, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

PARKER, District Judge.

On December 11–14, 1995, I held a non-jury trial which focused on the discretionary function exception to the Federal Tort Claims Act. Due to the amount and complexity of the evidence, I requested that the litigants submit copies of their numerous, voluminous exhibits with all relevant sections highlighted. After careful review of the large number of highlighted exhibits provided, I have concluded that the discretionary function exception does apply, and that this case should be dismissed with prejudice.

### FACTUAL BACKGROUND

In 1942, our nation established an air base on the southern outskirts of Roswell, New Mexico to train Army Air Corps pilots for World War II. In 1949, the base was redesignated Walker Air Force Base and became a major Strategic Air Command ("SAC") post. During the Korean Conflict, the base had the responsibility of flying and supporting reconnaissance missions over Russia. In addition, the base was supposed to assist SAC war planes in bombing strategic targets in Russia, in the event of war. This mission was expanded in the 1960's to include providing support for the Vietnam Conflict effort. The Government deactivated the base in 1967. The following year, most of the site was deeded to the City of Roswell and became the Roswell Industrial Air Park.

Throughout operation of the base, the military washed and degreased aircraft and engines in areas on or near runways. Trichloroethylene ("TCE") is known to have been used by the Air Force as a degreasing agent in washing aircraft and engines. Plaintiffs contend that base personnel improperly disposed of the resulting waste water, which was hazardous because it contained TCE, by dumping it, or allowing it to run off, onto the ground and into ditches.

During the Summer of 1991, a flood in the Roswell area contaminated several domestic water wells. Acting on the complaints of residents, the New Mexico Environmental Department conducted tests on area wells in August and October 1991. Those tests detected TCE in twelve private wells located east of the former Walker Air Force Base site in an area known as Y–O Acres. Some of those wells belong to Plaintiffs in this case. The Army Corps of Engineers subsequently determined that the probable source of the TCE contamination was the site of the former Walker Air Force Base. In October and November 1991, the Corps of Engineers began to connect homes affected by the TCE-contaminated groundwater to Roswell's municipal water supply system and supplied the residents with bottled water during the waterline construction.

In August 1993, Plaintiffs filed claims for compensation with the Department of the Air Force. Following the rejection of those claims in March 1994, Plaintiffs filed this suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), et seq.

Plaintiffs contend that, following the promulgation of Executive Order 10014 in 1948, the Air Force was required to cooperate with state and local authorities in preventing the pollution of surface and underground waters; that New Mexico had an existing body of law governing the pollution of water during the time Walker Air Force Base was operational; and that New Mexico also had an oversight program in place, supervised by the State Engineer's office, to monitor and regulate business and industrial water use. Plaintiffs assert that the negligent manner in which Air Force personnel at Walker Air Force Base disposed of TCE-contaminated waste water violated the Executive Order, New Mexico law, and the Air Force's own regulations on the proper handling and disposal of TCE and other hazardous wastes.

The government moved for dismissal asserting that this court lacked jurisdiction because the conduct at issue fell within the discretionary function exception to the FTCA. See 28 U.S.C. § 2680(a).

### DISCRETIONARY FUNCTION EXCEPTION

The FTCA generally allows suits against the United States for damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee

of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b). In such suits, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA, however, specifically excludes from its coverage any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 2761–62, 81 L.Ed.2d 660 (1984). Application of the discretionary function exception is, therefore, a threshold jurisdictional issue which precedes any negligence analysis. *See Johnson v. United States*, 949 F.2d 332, 335–36 (10th Cir.1991); *Weiss v. United States*, 889 F.2d 937, 938 (10th Cir.1989).

The United States Supreme Court has developed a substantial body of law regarding the discretionary function exception.[1] The Court has adopted a two-pronged test. that determines whether the exception applies. First, a court must inquire whether the conduct at issue is discretionary, or whether it has been specifically mandated by federal statute or regulation. The Supreme Court has defined discretionary conduct as that which "involves an element of judgment or choice." *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). *See also Dalehite v. United States*, 346 U.S. 15, 34, 73 S.Ct. 956, 967, 97 L.Ed. 1427 (1953). However, if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" the requisite discretion is not present, because "the employee has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958–1959. Thus, "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Varig Airlines*, 467 U.S. at 797, 104 S.Ct. at 2755.

Second, where the exercise of discretion is found, a court must determine whether it was "based on considerations of public policy." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958–1959. The Supreme Court has held that the discretionary function exception was intended to protect only those decisions "grounded in social, economic, and political policy." *Varig Airlines*, 467 U.S. at 814, 104 S.Ct. at 2765. This public policy aspect of the discretionary function test was clarified in *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). In *Gaubert*, the Supreme Court determined "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id.* at 324, 111 S.Ct. at 1274. The Court concluded that the "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325, 111 S.Ct. at 1275. Therefore, "[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id.*

The United States Court of Appeals for the Tenth Circuit has given the scope of the discretionary function exception a broad in-

---

**1.** *See, e.g., United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *United States v. S.A. Empresa de Viacao Aerea Rio· Grandense* *(Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

terpretation. *See Redmon v. United States,* 934 F.2d 1151, 1154 n. 1 (10th Cir.1991) (listing cases).

With respect to the first prong of the *Berkovitz* analysis, Plaintiffs contend that the Air Force violated several specific and mandatory statutory and regulatory provisions, and its actions are, therefore, not shielded by the discretionary function exception. Plaintiffs provided volumes of exhibits in an attempt to demonstrate that the Air Force had no discretion in its handling and disposal of TCE at Walker Air Force Base. Specifically, Plaintiffs contend that Executive Order 10014, 3 C.F.R. § 836 (1948), and the provisions of various Air Force regulations required the Air Force to cooperate with New Mexico pollution authorities to prevent contamination of water, and that the Air Force failed to comply.

█ I have reviewed Plaintiffs' exhibits in great detail. While Plaintiffs provided a substantial amount of material on New Mexico law and the handling of TCE by private industries, the only exhibits pertinent to the discretionary function analysis are those relating to *federal* law—Executive Order 10014 and the Air Force's own regulations for the time period in question.[2] In the relevant documents, the language of certain passages indicated by Plaintiffs does suggest a mandatory duty. However, "ostensibly mandatory provisions must be read 'in their entirety'." *Weiss v. United States,* 889 F.2d 937, 938 (10th Cir.1989) (quoting *Dube v. Pittsburgh Corning,* 870 F.2d 790, 793 (1st Cir.1989)). Such a reading of the pertinent documents in this case indicates that the Air Force did have discretion regarding both cooperation with state and local pollution control authorities, and its handling and disposal of industrial waste water.

Executive Order 10014 directs the various arms of the Executive Branch to cooperate with state and local authorities to ensure that wastes are disposed of in a manner conform-

ing with local water pollution programs. Examination of the text of the Order reveals, however, that they are only required to take "such action *as may be practicable.*" (Emphasis added.) The Order is silent on what might be considered "practicable," leaving that determination to the judgment and discretion of the various agency and department heads.

In implementing the Order, the Air Force interpreted "practicable" in at least one pertinent regulation as a recognition that "[t]he exigencies of military operations and security may preclude strict adherence to all of these recommendations relative to cooperation with the state pollution control authority." Air Force Manual ("AFM") 88–11 § 6.05. The Air Force manuals and regulations provided by Plaintiffs make clear that the Air Force consistently subordinated collateral issues to its military mission and security concerns.

Thus, base commanders were required to cooperate with local pollution control authorities "insofar as practicable," Air Force Regulation 85–14 ("AFR") § A3.02(a), and "provided that such standards do not conflict with established Air Force policies." AFR 91–9. The regulations accorded state and local officials no independent authority to view facilities, conduct tests, or examine records. *Id.* While state or local officials "may" be permitted to do so, the decision whether to allow them access was left to the discretion of the base commander. *Id.*

Moreover, where cooperation was deemed practicable, it was strictly limited to the parameters of existing Air Force policies and procedures. Base operations could not be altered or modified to comply with local requirements without the prior approval of the major air command. *Id.* Similarly, plans for new facilities, or expansions/alterations of existing facilities, "may" be submitted to state authorities for informational purposes, but not for approval. *Id.* It is apparent from the foregoing that Air Force regulations did

---

**2.** In addition to Executive Order 10014, the pertinent exhibits provided by Plaintiffs are Air Force Regulation 91–9, *Utilities Operation and Services: Sewage and Industrial Waste Works* (1950, 1953, 1958, 1961, 1965); Air Force Manual 88–11, *Sewage, Refuse and Industrial Waste,*

Chapter 5—"Sanitary Fill" (1955), and Chapter 6—"Industrial Waste" (1956); Air Force Regulation 85–14, *Maintenance and Operation of Sewage and Industrial Waste Plants and Systems* (1959); Air Force Regulation 85–5, *Installations–General: Maintenance of Installations* (1961).

provide for discretion in cooperating with state and local pollution control authorities.

Plaintiffs argue in the alternative that Walker AFB's handling of industrial waste violated the Air Force's own requirements. However, nothing in the regulations requires specific mandatory procedures. The regulations dealing with industrial waste recognize the "varied nature of industrial waste problems" and emphasize "principles rather than procedure." AFM 88–11 § 6.01. Further, they leave fundamental decisions regarding the specifics of location, design and operation of facilities to the judgment of the base engineer. *Id.* at § 6.02, § 6.17; AFR 91–9; AFR 85–14. For example, while it is acknowledged that certain industrial wastes, including solvents, may have a deleterious effect on sewage systems and should be excluded to the maximum extent possible, AFM 88–11 § 6.13, "it does not follow that it is not feasible under some circumstances to handle such wastes at sewage treatment works." *Id.* at § 6.14. Similarly, a number of options are available for the disposal of sewage, including "in some cases, into dry stream beds." AFR 85–14 § A3.08(b). It is well settled that the actions of subordinates in conformity with a discretionary policy are not reviewable. *See Varig Airlines,* 467 U.S. at 820, 104 S.Ct. at 2767; *Dalehite,* 346 U.S. at 36, 73 S.Ct. at 968; *Allen v. United States,* 816 F.2d 1417, 1426 n. 2 (10th Cir.1987) (McKay, J. concurring), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 694, 98 L.Ed.2d 647 (1988). Further, where the conduct at issue involves an exercise of discretion by a governmental agency or employee, § 2680(a) preserves governmental immunity "whether or not the discretion involved be abused." On this basis, I conclude that the Air Force did not have specific, mandatory regulations regarding the handling and disposal of industrial waste and, therefore, the conduct at issue was discretionary.

The second step of the *Berkovitz* inquiry requires a determination of whether the discretion was grounded in social, economic or political policy, or whether it was simply day-to-day operational discretion. There seems little doubt in this case that the Air Force's actions involved policy choices of the most basic kind. During the twenty-five years that Walker AFB was operational the United States was engaged in three major armed conflicts—World War II, the Korean War, and the Vietnam War—as well as the "Cold War". First as a pilot training center and later as an SAC base, Walker's mission was to provide air support during those conflicts. The defense and security considerations that mission would entail are clearly "susceptible to policy analysis," *Gaubert,* 499 U.S. at 325, 111 S.Ct. at 1275, and are a proper basis for the exercise of discretion. Moreover, the United States Court of Appeals for the Tenth Circuit has held that where discretion is found, "it is unnecessary for government employees to make an actual 'conscious decision' regarding policy factors . . . The failure to consider some or all critical aspects of a discretionary judgment does not make that judgment less discretionary and does not make the judgment subject to liability." *Kiehn v. United States,* 984 F.2d 1100, 1105 (10th Cir.1993).

Plaintiffs contend that the handling and disposal of industrial waste is not the type of decision that would implicate policy considerations. The Supreme Court in *Gaubert,* however, held that the discretionary function exception affords protection for day-to-day operational decisions that are policy based. *Gaubert,* 499 U.S. at 325, 111 S.Ct. at 1275. The *Gaubert* Court noted that "[i]f the routine or frequent nature of a decision were sufficient to remove an otherwise discretionary act from the scope of the exception, then countless policy-based decisions by regulators exercising day-to-day supervisory authority would be actionable. This is not the rule of our cases." *Id.* at 334, 111 S.Ct. at 1279. As noted above, the Air Force's regulations make clear that security and military readiness concerns were the primary guides of all decisionmaking. Because the Air Force's decisions regarding cooperation with state pollution control authorities were both discretionary and grounded in public policy considerations, they fall within the discretionary function exception.

Plaintiffs further maintain that New Mexico has extensive state law regulating the use, and particularly the contamination of,

water including groundwater, and that the Air Force had no discretion to disregard it. This argument misses the point. Under the discretionary function analysis the crucial inquiry is whether there were any *federal* statutes or regulations mandating specific conduct. Admirably, the State of New Mexico acted early and wisely in attempting to preserve the purity and quality of the state's groundwater. However, state law, even though comprehensive and detailed, is not relevant to this analysis. As discussed above, in this case the pertinent Air Force regulations did not mandate compliance with state law or other specific conduct. Discretion was provided for in the repeated acknowledgment that cooperation with state authorities was limited by a determination of its practicability in the face of the exigencies of military operations.

Plaintiffs also provided several examples of TCE-handling guidelines from industries in an attempt to demonstrate that the Air Force could have devised better regulations for dealing with TCE-contaminated waste water. The purpose of the discretionary function exception, however, is to prevent judicial second-guessing of government agency decisions. *Varig Airlines,* 467 U.S. at 814, 104 S.Ct. at 2764. Thus, the question in this case is not whether the Air Force could have been more circumspect in its handling of TCE, but whether in allegedly failing to be more careful the Air Force violated specific, mandatory directives. As noted above, the regulations provided by Plaintiffs do not constitute such specific and mandatory directives.

Plaintiffs rely on *Clark v. United States,* a case from the United States District Court for the District of Washington which held that Air Force regulations combined with Washington state law established a nondiscretionary standard of care which required the Air Force to consider the effects on groundwater in decisions relating to waste disposal at McChord AFB. 660 F.Supp. 1164

(W.D.Wa.1987), *aff'd,* 856 F.2d 1433 (9th Cir. 1988). In *Clark,* the plaintiffs' wells were contaminated with TCE that had its source in landfills located on McChord AFB. The court found that, while the decision to have landfills on McChord AFB was discretionary, the Air Force's discretion was limited by its duty to follow Washington state laws and regulations dealing with water pollution.

The decision in *Clark* is distinguishable and of questionable current vitality because it was decided before the Supreme Court adopted the discretionary function analysis standards of *Berkovitz* and *Gaubert.* Moreover, the *Clark* court did not engage in a clear, preliminary discretionary function analysis; instead it focused on the question of negligence. The United States Court of Appeals for the Tenth Circuit, however, applies the two-pronged test set forth in *Berkovitz,*[3] and has held that application of the discretionary function exception is a threshold jurisdictional issue that precedes any negligence analysis. *Johnson,* 949 F.2d at 335. The *Clark* decision also appears anomalous in its conclusion that the Air Force had a duty to comply with state water pollution laws. The Supreme Court clearly stated in *Berkovitz* that the mandatory nature of *federal* statutes, regulations, or policies determines whether the discretionary function exception applies. *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1959. I have been unable to locate a single case, other than *Clark,* applying a discretionary function analysis, which has held that state law is binding on federal agencies and installations. For these reasons, I believe Plaintiffs' reliance on *Clark* is misplaced.

Plaintiffs also cited *Redland Soccer Club v. Department of the Army,* 835 F.Supp. 803 (M.D.Pa.), *aff'd in part, rev'd in part,* 55 F.3d 827 (3rd Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 772, 133 L.Ed.2d 725 (1996). In *Redland Soccer,* the United States District Court for the District of Pennsylvania held that the Army's decisions

---

**3.** See, e.g., *Tew v. United States,* 86 F.3d 1003, 1005 (10th Cir.1996); *Domme v. United States,* 61 F.3d 787, 789 (10th Cir.1995); *Black Hills Aviation, Inc. v. United States,* 34 F.3d 968, 972 (10th Cir.1994); *Kiehn v. United States,* 984 F.2d 1100, 1102 (10th Cir.1993); *Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1537–38 (10th Cir.1992); *Johnson v. United States, Dept. of Interior,* 949 F.2d 332, 336 (10th Cir.1991); *Zumwalt v. United States,* 928 F.2d 951, 953 (10th Cir.1991); *Boyd v. United States ex rel. U.S. Army, Corps of Eng'rs,* 881 F.2d 895, 897 (10th Cir.1989).

regarding the placement and content of a landfill, and its subsequent decision to transfer the land were not protected by the discretionary function exception. The trial court in *Redland Soccer* addressed only the second prong of the *Berkovitz* analysis and determined that, unless the policy concerns were "in direct furtherance of the agency or department's congressionally delegated mission," *Id.* at 808, they were not the type of policy considerations protected by the discretionary function exception.

The *Redland Soccer* court's reasoning was harshly criticized in a case factually analogous to the one at bar. In *Western Greenhouses v. United States*, the court pointedly noted that *Redland Soccer* would shift "the focus of the [*Berkovitz*] analysis from the nature of the decision to its categorical type" forcing courts to "determine the scope of the mission or missions that Congress has delegated to each agency and whether each decision implicated this mission." 878 F.Supp. 917, 929 (N.D.Tex.1995). The court in *Western Greenhouses* concluded that "this was not the type of invasive inquiry the Supreme Court ... contemplated in its prior holdings." *Id.* The *Western Greenhouses* court held that such an inquiry was inconsistent with Fifth Circuit precedent. *Id.* It is no less inconsistent with Tenth Circuit precedent, and the broad interpretation the Tenth Circuit has given the discretionary function exception.[4]

In summary, I find that the Air Force had discretion both in its decisions regarding cooperation with state and local pollution control authorities, and in its decisions about handling and disposing of industrial waste at Walker AFB. The discretionary function exception to the Federal Tort Claims Act covers those decisions by the Air Force.

IT IS THEREFORE ORDERED that this case must be dismissed with prejudice under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

---

4. For a recent decision where the United States District Court for the District of New Mexico found that the discretionary function applied, *see* *Schwartzman, Inc. v. ACF Industries, Inc.*, No. CIV 93–0027 M (D.N.M. Dec. 12, 1996) (Mechem, J.).