**Hazel D. WATT, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

Civ. A. No. 76–1780.

United States District Court,
District of Columbia.

Jan. 26, 1978.

Daniel E. Schultz and Melinda Gray Murray, Washington, D. C., for plaintiff.

Charles E. Mandolia and Mark S. Landman, Torts Section, U. S. Dept. of Justice, Washington, D. C., for defendant.

## OPINION

CURRAN, District Judge.

This action against the United States under the Federal Tort Claims Act seeks to recover damages for personal injuries sustained by the plaintiff as a result of a fall on steps in the fountain area facing the north door of the Museum of History and Technology of the Smithsonian Institution, an entity of the United States Government. The court has jurisdiction under 28 U.S.C. § 1346(b).

The plaintiff, Hazel D. Watt, a resident of New York, New York, had visited the Museum with her daughter and departed through the north door at about 2:45 p. m. on April 16, 1975, a sunny, clear and dry day. The two crossed a concrete sidewalk and curving asphalt driveway and entered the fountain area, descending two small steps. They were then standing on the uppermost of three levels of semicircular granite platform steps. The daughter, Ann Wiechmann, proceeded to the street to summon a taxicab while the plaintiff remained standing in the position just described. After waiting awhile, the plaintiff decided to

join her daughter on the street and walked to the right a short distance when she suddenly fell and fractured her right elbow. The plaintiff was wearing shoes with a 1½″ heel, composition soles, rubber heels, and equipped with rubber preservers at the toe and heel.

The semi-circular platform steps around the circumference of the fountain are constructed of variegated granite. The riser of each step is approximately 5⅝ inches high and the tread is approximately 10 feet deep. On April 16, 1975, there were no cautionary signs warning pedestrians of the existence of the platform steps, nor were there stripes or other markings at the edge of the platform steps. The plaintiff's fall occurred at the edge of the top platform step.

The plaintiff alleges that the pedestrian walkway around the fountain was unreasonably dangerous because of the difficulty presented in visually detecting the presence of the platform steps. Additionally no warning was posted to alert pedestrians of the existence of the platform steps. The plaintiff's allegations include negligence in the design, construction and maintenance of the platform steps and a failure to exercise reasonable care.

The plaintiff testified that she did not see and was not aware of the presence of steps as she walked along the top platform step. She was looking ahead but not at the ground. She was aware that she was at a slightly higher elevation than the street, but it was not apparent to her that the downgrade was accomplished by steps rather than a ramp.

Expert testimony was presented by both parties. A psychologist and human factors specialist called by the plaintiff testified that the variegated granite presented a visual dilemma because of its texture and because the sharp edges of the rectangular platform blocks with grouting between them do not provide a contrast to the edge of the step. A person should be able to distinguish a step when three to four strides away, and at the area where the fall occurred, one does not receive a visual cue of the existence of a step until only one stride away.

An architect testified that the fountain area is designed so as to invite people to walk through but it is unsafe. A change in grade creates a hazard and unless steps are uniform and readily discernible, they are defectively designed.

Evidence was also received of observations made of use by the public of the fountain area. In a two-hour period, two hundred ninety-seven persons descended the steps, of which number thirty-one tripped and one fell. Additionally, the supervisor of the Museum's security office had requested three months before Mrs. Watt's fall that the feasibility be investigated of installing stripes on the steps because of the frequency of falls. Among the documentary evidence was the architect's memorandum of January 4, 1966, indicating the concern of General Services Administration officers regarding the design of single steps on the semi-circular sides of the pool and suggesting the use of ramps or pairs of risers as means of reducing the possible hazard. The comment concluded with this sentence, "However, GSA approval of the design will not be withheld on this account".

The government presented evidence of the millions of persons who visit the Museum yearly and in the six years between construction of the fountain area and plaintiff's fall, no reports had been received of falls on the platform steps. The architect who had ultimate responsibility for approving the Museum design for General Services Administration testified, as did a human factors specialist, who advised the court that the fountain area platform steps were safe when designed in 1966 according to the state of knowledge at that time on human locomotion. He admitted on cross examination that by the standards of today, the steps are a hazard and there is visual difficulty in approaching the platform steps.

Stipulated facts include the following: "The design of the fountain area including the platform steps was approved by the government in 1966. Construction

was completed and the fountain area was open to the public in January, 1969. The fountain and fountain area, including the platform steps, were designed by the architectural firm of Steinmann and Cain pursuant to a contract with the defendant, which design was approved by officers and employees of defendant including, *inter alia*, Karel Yasko, then General Services Administration's Assistant Commissioner for Design and Construction and an architect and civil engineer. The fountain area was constructed in accordance with the design specifications.

The fountain area, including the platform steps, was in the same condition on April 16, 1975, as it was when construction was completed and it was opened to the public in January, 1969. No repairs, alterations or other work were performed in the area in question from completion of construction until June, 1977. The visual appearance of the fountain area including the platform steps has not been altered from completion of construction to the present."

### Issue of Liability

The jurisdiction of the court and the liability of the defendant are found upon the Federal Tort Claims Act,[1] the provisions of which require the United States in this case to comply with standards of care adhered to by the law of the District of Columbia. That standard is one of reasonable care and was stated by the United States Court of Appeals for the District of Columbia Circuit in *Smith v. Arbaugh's Restaurant, Inc.*,[2] when that court eliminated the common law distinctions of the entrant as the grounds upon which degrees of negligence are based:

"A landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." at 89, 469 F.2d at 100.

The standard of reasonable care was likewise applied by the District of Columbia Court of Appeals in *Noble v. Worthy*, D.C. App., 378 A.2d 674 (1977). See also Restatement Torts 2d, §§ 283–4.

While the fountain and surrounding area was designed by an architectural firm retained for the purpose, the design was subject to the approval of architects of the General Services Administration and employees of the defendant. The defendant is liable for the negligent acts of its employees, 28 U.S.C. § 1346(b).

■ By a preponderance of the evidence, the plaintiff proved that the platform steps in the fountain area were designed so as to create a hazard for a pedestrian. It is difficult to distinguish that a step is present because of the sameness of color and inability to discern the edges. It is hazardous not to indicate different levels. The platform steps were defectively designed because of the inability to detect their presence, and the government architects who approved the design showed a want of reasonable care. The architects' negligence is imputed to the defendant.

■ The defendant's counsel took the point of view that millions of people had visited the Museum between 1969 and 1975

---

1. By the provisions of 28 U.S.C. § 1346(b), "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for . . . personal injury . . . caused by the neglig[ence] or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the U.S., if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 2674 provides, "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

2. 152 U.S.App.D.C. 86, 469 F.2d 97 (1972), certiorari denied 93 S.Ct. 2774, 412 U.S. 939, 37 L.Ed. 399. See also *Cooper v. Goodwin*, 155 U.S.App.D.C. 449, 478 F.2d 653 (1973); *Hopkins v. Baker*, 180 U.S.App.D.C. 163, 553 F.2d 1339 (1977).

and there were no reported falls on the platform steps. Prior injuries do not raise a conclusive presumption of due care, *Hecht Co. v. Harrison*,[3] and proof was made to the court of the high incidence of tripping and stumbling on the platform steps.

There remains the question of contributory negligence. Contributory negligence was not affirmatively pleaded, as required by Rule 8(c), F.R.Cv.P. At the commencement of the trial, the defendant's attorney moved to amend the Answer to include the affirmative defense of contributory negligence, which motion was denied as being too late. Again at the conclusion of the defendant's evidence, a renewed motion to amend the pleading to conform to the evidence was made, Rule 15(b), F.R. Cv.P., and this motion was likewise denied. A limited amount of evidence had been presented on the issue of contributory negligence as to statements made by the plaintiff immediately after her fall and on the question of whether she was wearing bifocal eyeglasses. A pedestrian is not obligated to keep her eyes focused on the ground, *District of Columbia v. White*,[4] nor expected to see what was not to be seen. The evidence does not comport with a finding of contributory negligence, and for that reason amendment of the pleading was denied.

It is the opinion of the Court that the negligence of the defendant's architects in approving a faulty design of platform steps was the proximate cause of the plaintiff's injury and that the architects knew and recognized the hazard at the time approval was given so that the defendant had actual notice of the defect. The plaintiff is entitled to recover damages.

### Issue of Damages

The plaintiff was in good health at the time of her fall. She was age 77 and suffered a fractured distal humerus. Her arm was fitted with a cast until the fracture healed. She experienced excessive pain and discomfort and restrictions to her normal activities. The special damages of medical, nursing, therapy, transportation and household expenses total $3,465.50.

The fractured bone healed in a displaced position, and the plaintiff is limited in raising her arm. The range of motion is 60 to 80 degrees. Traumatic arthritis developed and pain continues. Her life expectancy is 8.6 years.

The Court awards the plaintiff $30,000. damages. Judgment is entered accordingly.

This opinion constitutes the findings of fact and conclusions of law required by Rule 52, F.R.Cv.P.

---

3. 78 U.S.App.D.C. 93, 137 F.2d 687 (1943).

4. 48 App.D.C. 44 (1918).