15 F.3d 1088
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Morton Other BULL, Sr., Personal Representative of the
Estate of Alonzo Other Bull; Margaret Other Bull;
Raynard Other Bull, individually,
Plaintiffs-Appellants,
v.
UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
BUREAU OF INDIAN AFFAIRS; United States of
America; Crow Tribal Housing Authority,
Defendants-Appellees.
 No. 92-35257.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 5, 1993.*
Decided Jan. 10, 1994.
 
 Before: TANG, FARRIS, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 This action arises out of a tragic incident in which appellants lost family members and their home in a fire. Morton Other Bull, Sr., as personal representative for decedents Alonzo, Margaret, and Loudall Other Bull, and Raynard Other Bull appeal the district court's grant of two motions to dismiss their amended complaint for its failure to state a claim upon which relief can be granted. The motions to dismiss addressed appellants' claims against the United States and the Crow Tribal Housing Authority ("CTHA") for the alleged negligent design and construction of appellants' home.
 
 
 3
 The Government argues that the Federal Torts Claims Act ("FTCA"), 28 U.S.C. Sec. 2671 et seq., fails to provide a waiver of sovereign immunity for claims arising from Department of Housing and Urban Development ("HUD") construction oversight activities. The CTHA points out that it is a tribal entity and argues that appellants fail to allege a statutory basis for federal jurisdiction. The CTHA concludes, therefore, that appellants' claims against it must be decided first by a tribal court.
 
 
 4
 A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is a ruling on a question of law and as such is reviewed de novo. Oscar v. University Students Co-Operative Ass'n, 965 F.2d 783, 785 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 113 S.Ct. 655 (1992); Kruse v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990). Review is limited to the contents of the complaint. Buckey v. Los Angeles, 968 F.2d 791, 794 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 599 (1992). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Id. A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. Id.
 
 
 5
 * To recover against the United States under the FTCA, appellants must show that their injuries were due to the "negligent or wrongful act or omission of any employee of the Government." 28 U.S.C. Sec. 1346(b). The FTCA waives, with certain exceptions, the Government's traditional sovereign immunity from suit for common law torts committed by government agents, 28 U.S.C. Sec. 2674, but the source of the claim for relief must be the law of the state where the act or omission complained of occurred. 28 U.S.C. Sec. 1346(b); Lutz v. United States, 685 F.2d 1178, 1182 (9th Cir.1982). Here, appellants must either show negligence on the part of HUD or its employees, or establish that the CTHA was in fact, if not in name, a federal agency and that its employees were negligent. Appellants refrain, however, from pursuing the latter theory.[1] The United States argues that appellants failed to state a viable claim against it for negligence on the part of HUD or its employees.
 
 
 6
 Appellants claim that the United States is liable for the alleged negligence of HUD's architect in approving the design and construction of the Other Bull home; that is, for the architect's approval of the design and construction of allegedly defective windows.[2] The district court excluded this possibility on the ground that appellants merely alleged that HUD's architect acted to oversee the project to ensure that it met governmental standards. The court found no suggestion in the complaint that HUD or its employee intervened in the design or construction of the house to such an extent as to create the defective windows.
 
 
 7
 For appellants to prevail on their theory that HUD's architect acted negligently, they must establish that the alleged design defect in the windows resulted from a breach of a duty owed by HUD to the occupants of the home under state law. Appellants first suggest that HUD had an affirmative duty, arising out of its contractual right to review and approve the plans and construction of the home, to ensure that the home was safe. We reject this contention.
 
 
 8
 The United States neither owned nor was in possession of the appellants' home during its construction. HUD was merely a financier with rights to review and inspect the plans and construction of the home. HUD's interest in inspecting was to ensure compliance with the applicable contracts; "its employees were not conducting general safety inspections, but rather were at the site to ensure that the project was buitl according to plans and to protect HUD's financial interests." Perez v. United States, 594 F.2d 280, 287 (1st Cir.1979); see Wright v. United States, 599 F.2d 304, 305 (9th Cir.1979) (Government, as lender of money to recreation association through federal lending agency, could not be liable for damages caused by alleged negligence of borrowing corporation in management of its swimming pool, despite contention that there was negligent supervision of borrower.)
 
 
 9
 Furthermore, appellants fail to point to some act of intervention by HUD in the design or construction process "that could meaningfully be said to have caused the [windows to be unsafe], thereby increasing the risk of harm to the [home occupants]." Perez, 594 F.2d at 288. As it was that the CTHA had ultimate responsibility for designing and building the project, "[i]t would not be enough to show that the allegedly unsafe [windows were] a remote consequence of [the CTHA's] efforts to deal with HUD's objections to another feature of the original plans." Id. HUD was entitled to request improvements in the CTHA's design without assuming responsibility for all changes the CTHA thereafter might make in response to its requests. "Only if HUD, as distinct from [the CTHA], could be said to have been the proximate, rather than merely the incidental, cause of [appellants' injuries] could the United States be held liable." Id. Thus, appellants would have to prove that HUD either required the windows to be designed the way they were or unreasonably insisted on some change that made the defective design unavoidable. None of appellants' allegations in the complaint suggest, however, that the United States intervened in the design or construction of the home in such a way as to create the defective windows.
 
 
 10
 Finally, "[t]here is no Montana case law that would hold a private person in the same position as the [G]overnment in this case (for example, a bank or savings and loan which had lent money to build a home and had inspected the construction) responsible for negligent construction on the part of the person or company building the home." Trombetta v. United States, 613 F.Supp. 169, 170 (D.Mont.1985). Therefore, without a duty owed by HUD to appellants, there can be no breach of duty and thus no claim for relief. Appellants, however, vigorously challenge this last point.
 
 
 11
 Appellants argue that the United States' liability is established via its architect's alleged negligence under the Good Samaritan Doctrine.[3] Appellants rely on the form of this doctrine described in Sec. 324A, Restatement of Torts, Second, which provides:
 
 
 12
 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
 
 
 13
 (a) his failure to exercise reasonable care increases the risk of such harm, or
 
 
 14
 (b) he has undertaken to perform a duty owed by the other to the third person, or
 
 
 15
 (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
 
 
 16
 This particular form of the Good Samaritan Doctrine is recognized under the applicable law of Montana. See Jeffries v. United States, 477 F.2d 52, 55 (9th Cir.1973); Trombetta, 613 F.Supp. at 169.
 
 
 17
 This Court delineated the elements necessary to show a claim under Sec. 324A in Roberson v. United States, 382 F.2d 714, 721 (9th Cir.1967):
 
 
 18
 1. The actor, in this case the Government, must undertake, gratuitously or for consideration, to render services to another;
 
 
 19
 2. The services so rendered must be of a kind which the actor should recognize as necessary for the protection of third persons [in this case those situated like appellants];
 
 
 20
 3. The actor must fail to exercise reasonable care in the performance of his undertaking;
 
 
 21
 4. The failure to exercise reasonable care must result in physical harm to the third persons or their things; and
 
 
 22
 5. The actor's failure to exercise such care must (a) increase the risk of such harm, or (b) the undertaking must have been to perform a duty owed by the other to the third persons, or (c) the harm must be suffered because of the reliance of the other or the third persons upon the undertaking.
 
 
 23
 Roberson involved an action under the FTCA to recover damages for personal injuries sustained when workmen fell while engaged in construction work at a federal dam project. This Court held that the first element of the test had not been satisfied, because by merely conducting a safety inspection program the Government was not undertaking a legal duty to render services.
 
 
 24
 The essence of appellants' contention here is that HUD's architect had a professional responsibility to ensure the safety of the home plans he reviewed and approved. This obligation, appellants suggest, satisfies the requirement that they demonstrate the Government undertook a legal duty to render services. Appellants' theory hinges on Watt v. United States, 444 F.Supp. 1191, 1194 (D.D.C.1978). Watt, however, is inapplicable.
 
 
 25
 Watt involved an FTCA action to recover damages for personal injuries sustained by the plaintiff in a fall on steps on United States Government property. Citing the legal standard that "[a] landowner must act as a reasonable man in maintaining his property in a reasonably safe condition," the court found that the plaintiff sustained his burden of proof in demonstrating that the steps on the Government's property "were designed so as to create a hazard for a pedestrian." 444 F.Supp. at 1194.
 
 
 26
 Distinct from the instant case, the Government's liability in Watt arose out of its obligation to act reasonably as a landowner. This obligation connotes a more substantial burden than merely inspecting property to ensure contractual or financial interests. As an employee of the landowner, the architect had an obligation to act reasonably in reviewing and approving the designs for the steps. As stated previously, the United States is not a landowner nor di it undertake to design or build the home in the instant case; Watt, therefore, is manifestly distinguishable. Moreover, Watt does not stand for the proposition that, as appellants suggest, a Government architect has a professional duty that imputes to the United States an undertaking of a legal duty to render services. Appellants simply fail to establish by their allegations that the United States undertook a legal duty in this case upon which they can rely. We uphold, therefore, the district court's grant of the Government's motion to dismiss.[4]
 
 II
 
 27
 Appellants next challenge the district court's dismissal of their claims against the CTHA for failure to exhaust tribal remedies.
 
 
 28
 In National Farmers Union Ins. Companies v. Crow Tribe of Indians, 471 U.S. 845 (1985), and Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9 (1987), the Supreme Court announced that principles of comity require federal courts to dismiss or to abstain from deciding cases in which concurrent jurisdiction in an Indian tribal court is asserted. See Stock West Corp. v. Taylor, 942 F.2d 655, 660 (9th Cir.1991) (Stock West II ). "The requirement of exhaustion of tribal remedies is not discretionary; it is mandatory." Burlington N.R. Co. v. Crow Tribal Council, 940 F.2d 1239, 1245 (9th Cir.1991). If deference is called for, the district court may not relieve the parties from exhausting tribal remedies. Id. Because abstention involves the discretionary exercise of a court's equity powers, it is reviewed only for an abuse of discretion. Turf Paradise, Inc. v. Arizona Downs, 670 F.2d 813 (9th Cir.), cert. denied, 456 U.S. 1011 (1982). We also review to determine whether the district court abused its discretion in dismissing rather than abstaining. See Burlington Northern, 940 F.2d at 1245; Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1229 (9th Cir.1989) (Stock West I ). Mandatory deference does not follow automatically from an assertion of tribal court jurisdiction. The Supreme Court has further noted that exhaustion would not be required "where an assertion of tribal jurisdiction 'is motivated by a desire to harass or is conducted in bad faith,' or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." National Farmers Union, 471 U.S. at 856 n. 21 (internal citation omitted). More recently, this Court held that deference to tribal courts is not required when the disputed issue is not a "reservation affair" or did not "arise[ ] out of the reservation." Stock West II, 942 F.2d at 661.
 
 
 29
 Appellants argue that judicial economy requires this action to proceed in the district court. This interest in judicial economy falls short, however, of outweighing the interest in the principles of comity. Indeed, this Court admonished in Stock West I that under the Supreme Court's ruling in National Farmers Union "the federal courts should not even make a ruling on tribal court jurisdiction ... until tribal remedies are exhausted." Stock West I, 873 F.2d at 1228.
 
 
 30
 Furthermore, this case involves a tragedy that "[arose] out of the reservation." Appellants are Native Americans seeking damages for personal injuries that are the result of their home, which was on the reservation, being destroyed in a fire. Add to these facts the fact that the home was designed and constructed by the Tribe's Housing Authority and "reservation affairs" may be said to be implicated.
 
 
 31
 The district court properly deferred to the tribal courts.
 
 
 32
 AFFIRMED.
 
 
 
 *
 The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Appellants clarify in their reply brief that they do not claim the United States is responsible for the negligence of local agency employees in the construction and maintenance of the home. We take this as meaning that appellants do not pursue a claim against the United States for the acts or omissions of the CTHA
 
 
 [2]
 Appellants fail to allege that the architect is negligent with respect to the alleged faulty stove and doorknob
 
 
 [3]
 The United States argues that appellants' allegations upon which this theory is based were not in the complaint nor were they raised previous to this appeal. Appellants' response to the Government's motion to dismiss, however, does not support this contention. Further, the allegations of the amended complaint, keeping in mind that Rule 8(a), Fed.R.Civ.P., requires only notice pleading, are general enough to notify the Government of a claim against it for the negligence of its architect in reviewing and approving the design of the home's. Moreover, viewing the amended complaint in light of the standard of review for a motion to dismiss compels us to consider appellants' allegations
 
 
 [4]
 As a result of this holding, we need not address the Government's contention that service of the amended complaint nearly one year after appellants' claims were denied by administrative action violates the six-month rule under 28 U.S.C. Sec. 2401(b)