_____

No. 96-1405
_____

Roger R. Chantal,                          *
                                           *
        Plaintiff-Appellant,               *
                                           * Appeal from the United States
                                           * District Court for the
        v.                                 * Eastern District of Missouri.
                                           *
United States of America,                  *
                                           *
                                           *
        Defendant-Appellee.                *


_____

                Submitted:  November 22, 1996

                   Filed:  January 9, 1997
_____

Before RICHARD S. ARNOLD, Chief Judge, MAGILL, Circuit Judge and SACHS,[*]
      District Judge.

_____

SACHS, District Judge.


        Roger Chantal appeals the district court's[1] grant of summary judgment
in favor of the United States in this suit brought under the Federal Torts
Claim Act, 28 U.S.C. § 2671 et. seq. (FTCA).  The district court concluded
that plaintiff's claim was barred by the

_____

        *The Honorable Howard F. Sachs, United States District
        Judge for the Western District of Missouri, sitting by
        designation.

        [1]The Honorable Charles A. Shaw, United States District Judge
for the Eastern District of Missouri.

discretionary function exception to the FTCA.  For the reasons discussed below, we affirm.

## I.

Above the grounds of the Jefferson National Expansion Memorial National Historic Site in St. Louis, Missouri, rises the stainless steel Gateway Arch erected to honor the people who contributed to the territorial expansion of the United States.  See generally 16 U.S.C. §§ 450jj to 450jj-9 (statutory provisions governing development and administration of the Memorial).  As originally designed by Eero Saarinen in 1960, the base of each leg of the Arch features a ramp leading to the subterranean complex housing the Museum of Westward Expansion.  The ramp is bordered by a series of step-like horizontally triangulated extensions which decrease in depth until they blend into the downramp.  Sworn statements of the Memorial's engineer and park historian indicate Saarinen designed these step-like architectural features to aesthetically complement the angles of the Arch and the descending ramps.  Since its construction, the Memorial has been administered by the Department of the Interior through the National Park Service.  See 16 U.S.C. § 450jj-5.

On June 29, 1992, Chantal sustained injuries as a result of a fall after tripping on one of the steps near the north leg of the Arch at a point where the step was only four inches high.  He alleges the government was negligent in maintaining the steps and/or failed to warn of the danger posed by the unmarked shallow steps.[2]  He contends the government had a duty to replace the steps with a ramp, install a railing to block off the steps from use, or mark the edge of the steps with some form of visual warning.

---

[2]Chantal also pled, but tacitly abandoned during briefing, claims of professional malpractice in designing the step-like features without adequate safety consideration, and that a negligently placed trash barrel obscured the presence of the step upon which he tripped.

The government filed a motion to dismiss, contending Chantal's suit is barred by the discretionary function exception to the FTCA. Several exhibits were submitted with the motion. The district court properly treated the motion to dismiss as a motion for summary judgment after providing Chantal the opportunity to submit additional material on the issue presented. See Fed. R. Civ. P. 12(b); Buck v. FDIC, 75 F.3d 1285, 1288 (8th Cir. 1996). The district court concluded that the challenged conduct involved discretionary functions immune from suit under the FTCA. Chantal appeals this decision.[3]

## II.

We review a grant of summary judgment de novo. Maitland v. University of Minn., 43 F.3d 357, 360 (8th Cir. 1994). Summary judgment is appropriate if the record shows there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Chantal does not assert that there are any disputed issues of material fact. Instead, he contends the government was not entitled to judgment as a matter of law. He argues that the discretionary function exception does not apply because a federal regulation imposes a mandatory course of action regarding the configuration of the steps at the Memorial or, alternatively, that the decision not to warn visitors of the alleged danger created by the unusually designed steps did not involve a decision based on public policy considerations.

---

[3]The district court also found that Chantal, as a nonhandicapped individual, lacked standing to bring an action for the alleged noncompliance with regulations designed to implement the agency's policy of handicap accessibility. The issue of standing to rely on statutes and regulations adopted to protect persons with physical handicaps could well be dispositive if our analysis went beyond the discretionary functions issue to the issue of negligence under Missouri law. Nevertheless, we need not address the issue at present because we are convinced the discretionary nature of the conduct at issue bars Chantal's tort claim.

-3-

## III.

The FTCA generally provides that the United States shall be liable, to the same extent as a private party, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b).  Under one of several exceptions to this broad waiver of sovereign immunity, however, the government is not liable for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).

The Supreme Court has developed a two-step test to analyze whether governmental conduct is immune from suit under the discretionary function exception.  See Berkovitz v. United States, 486 U.S. 531, 536 (1988).  As a preliminary matter, the nature of the challenged conduct must be determined since the exception "covers only acts that are discretionary in nature, acts that `involv[e] an element of judgment or choice.'"  United States v. Gaubert, 499 U.S. 315, 322 (1991) (quoting Berkovitz, 486 U.S. at 536).  If a "federal statute, regulation, or policy specifically pre-scribes a course of action for an employee to follow," then the conduct cannot involve an element of choice because the employee has no rightful option but to comply.  Berkovitz, 486 U.S. at 536.

Moreover, even if the conduct involves an element of choice, the second step in the analysis requires us to decide whether the challenged discretionary acts "are the kind that the discretionary function exception was designed to shield."  Gaubert, 499 U.S. at 315.  Congress fashioned this exception to prevent judicial "second-guessing" of decisions made by government officials which are essentially grounded in "social, economic, and political policy."  Berkovitz, 486 U.S. at 536-37 (quoting United States v.

-4-

Varig Airlines, 467 U.S. 797, 814 (1984)).  The exception, when properly construed, "protects only governmental actions and decisions based on considerations of public policy."  Gaubert, 499 U.S. at 323 (quoting Berkovitz, 486 U.S. at 537).  It thus "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."  Varig, 467 U.S. at 808.

## A.

Chantal first attacks the district court's determination that the Park Service's conduct relating to the step-like extensions involves discretionary decisions.  He asserts that agency regulations promulgated in 1987 to develop solutions to existing architectural and transportation barriers impeding the handicapped require that the Memorial be in compliance with the Uniform Federal Accessibility Standards (UFAS).[4]

Chantal contends that because the Park Service posted the international symbol of handicap accessibility on the doors to the Museum of Westward Expansion located at the bottom of the ramps descending from the base of the Arch, it has pronounced the facility to be handicap accessible. Under his reading of the regulations, the Park Service's decision not to reassign the services provided at the Memorial to another handicap accessible location indicates the agency has opted to alter the facility to achieve compliance, thereby binding itself to follow the mandatory directives of the UFAS.  Although the government concedes the UFAS applies to facilities constructed or altered after 1987, it asserts

_____

[4]The UFAS prescribes specific directives regarding changes in levels of walking surfaces, prohibits steps of unequal height, and requires that ramps rising more than six inches be flanked by handrails.  See 41 C.F.R. §§ 101.19.600 to 101.19.607 and Pt. 101, Subpt. 101-19.6, App. A.

the Park Service has no obligation to modify an unaltered facility such as the Memorial.

The Department of the Interior promulgated regulations in 1987 prohibiting handicap-based discrimination in programs or activities conducted by executive agencies. The regulations were adopted to effectuate provisions of the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. See 43 C.F.R. §§ 17.501 to 17.570; 29 U.S.C. § 794. Pursuant to these regulations, and subject to stated exceptions, it is the general policy of the agency to "operate each program or activity so that the program or activity, when viewed in its entirety, is readily accessible to and usable by handicapped persons." 43 C.F.R. § 17.550. The regulatory scheme grants to the agency the authority to decide whether an existing facility is handicap accessible and usable, when viewed as a whole. 43 C.F.R. § 17.550(a). If the agency determines a facility does not meet this accessibility standard, selection of the appropriate method to achieve compliance also rests within the agency's discretion. 43 C.F.R. § 17.550(b) (stating agency may utilize any methods that make its programs or activities "readily accessible to and usable by handicapped persons" and "is not required to make structural changes in existing facilities where other methods are effective in achieving compliance"). Contrary to Chantal's interpretation, the regulations do not mandate comprehensive alterations of existing facilities. Rather, they set forth a policy of handicap accessibility while granting the agency broad discretionary authority to achieve compliance with respect to existing facilities. The fact the agency has posted a recognized symbol of handicap accessibility does not strip this discretionary power from the agency. At most, the posting of the symbol represents the agency's view that the Memorial is in compliance with the regulatory handicap accessibili-

ty standard without alteration.[5]  Compliance with the detailed specifications of the UFAS is required only if the agency concludes that alteration is necessary to meet the accessibility standard.  Even then, only the portions altered must comply with the UFAS.  43 C.F.R. § 17.551.[6]

The Memorial undisputedly is an existing facility within coverage of the relevant regulations.  Chantal acknowledges that the step-like extensions were part of the original design.  Because no alteration of these steps has occurred, the UFAS does not apply.  Without specific directives applying to an existing facility like the Memorial, the agency's conduct in complying with the regulatory scheme involves acts that are discretionary in nature.

Although the regulations articulate the agency's general policy of handicap accessibility, the stated directives do not "[n]ecessarily require the agency to make each of its existing facilities or every part of a facility accessible to and usable by handicapped persons."  43 C.F.R. § 17.550(a)(1).  Additionally, the

---

[5]We have difficulty faulting this conclusion.  Chantal maintains that the Memorial is not handicap accessible, without clearly articulating how access to the museum may be inaccessible.  The configuration of the series of steps on which he fell forms the basis of Chantal's tort claim.  Any argument that these steps must be altered because they are not handicap accessible apparently fails because the adjoining ramps provide an alternate access to the museum.

[6]This section of the regulations reads as follows:

**§ 17.551  Program accessibility:  New construction and alterations.**

Each building or part of a building that is constructed or altered by, on behalf of, or for the use of the agency shall be designed, constructed, or altered so as to be readily accessible to and usable by handicapped persons.  The definitions, requirements, and standards of the Architectural Barriers Act (42 U.S.C. 4151-4157) as established in 41 CFR 101-19.600 to 101-19.607 apply to buildings covered by this section.

regulatory directives for program accessibility do not, "[i]n the case of historic preservation programs, require the agency to take any action that would result in a substantial impairment of significant historic features of an historic property." 43 C.F.R. § 17.550(a)(2). Discretionary decisions are inherent in the application of these regulations.

Chantal argues, however, that the agency's decision to adopt the regulations imposed a mandatory directive on the Park Service to comply with the UFAS in order to properly effectuate the agency's policy of handicap accessibility. He asserts that the Park Service's failure to meet the UFAS directives subjects the government to tort liability, relying primarily on Mandel v. United States, 793 F.2d 964 (8th Cir. 1986), to support his position. Mandel involved an FTCA claim by a patron of a national park who sustained severe injuries by hitting his head on a submerged rock after diving into a swimming hole recommended by a Park Service ranger. Chantal's reliance on Mandel is misplaced. The conduct at issue in Mandel was attributable not to the agency's decision to institute a policy of warning park users of the dangers of swimming in the river, but to the failure of an individual park ranger to comply with the safety policy previously adopted. Mandel, 793 F.2d at 967. Chantal's claim is readily distinguishable because it challenges discretionary decisions made by the agency itself with respect to achieving regulatory compliance at the Memorial. We therefore reject Chantal's contention that the Park Service's conduct at issue did not involve discretionary decisions.

B.

Chantal next argues that even if the agency's conduct involved discretionary acts, these acts did not involve the kind of decisions which the discretionary function exception was designed to protect because no policy considerations were involved. The government asserts that the step-like features at the base of the Arch were viewed by Eero Saarinen as an integral part of his

-8-

widely-acclaimed design of the Memorial.  The record on appeal contains the affidavits of the Memorial's park engineer and historian confirming that Saarinen's design was selected because the steps aesthetically complemented the angles of the Arch and the ramps.

Generally, when governmental policy permits the exercise of discretion, it is presumed that the acts are grounded in policy.  United States v. Gaubert, 499 U.S. 315, 324 (1991).  Chantal has offered no evidence rebutting this presumption.  Nor does he assert that he was injured as a result of negligently performed regular maintenance of the steps.  Instead, he attempts to persuade us that the Park Service should have placed less emphasis on aesthetics and given more consideration to visitors' safety by either altering the steps or marking them with visual warnings simply because the Memorial is a man-made object rather than a naturally created hazard.  We reject this argument.

The Park Service is statutorily charged with preserving the "fundamental purpose of the park by [conserving] the scenery and historical object[s] . . . by such means as will leave them unimpaired for the enjoyment of future generations." Soni v. United States, 739 F.Supp. 485, 487 (E.D. Mo. 1990) (quoting 16 U.S.C. § 1).  This mandate would require the agency to balance the safety benefit of making changes to the steps with the aesthetic effect of such changes on the Memorial's overall design and its historic significance.  It is well established that a decision which requires the weighing of competing interests is "susceptible to policy analysis" and typifies the kind of governmental decisions which Congress intended to shield from judicial second-guessing.  Gaubert, 499 U.S. at 325; see also Bowman v. United States, 820 F.2d 1393 (4th Cir. 1987) (finding decision not to place guardrails or warning signs along embankment of scenic highway resulted from balancing factors such as "safety, aesthetics, environmental impact and available financial resources" and thus involved a policy

judgment covered by the discretionary function exception); <u>Cassagnol-Figueroa v. United States</u>, 755 F.Supp. 514 (D. P.R. 1991) (concluding decision not to install safety features at low wall of 450-year-old fort based on preservation of historical significance of original design was policy-based exercise of discretion).[7]  Chantal analogizes his case to the FTCA action in <u>Watt v. United States</u>, 444 F.Supp. 1191 (D.C. D.C. 1978), for the negligent design of visually unobtrusive semi-circular platform steps constructed on government property.  Although the <u>Watt</u> court entered judgment against the government after a bench trial, the discretionary function exception was not a factor in the court's analysis.  Somewhat more in point analytically is the previous ruling by Judge Filippine in an FTCA case, holding that aesthetically-premised decisions concerning the Memorial involve policy considerations protected by the discretionary function exception.  <u>Soni v. United States</u>, 739 F.Supp. 485 (E.D. Mo. 1990) (decision to angle handrail on steps at the Gateway Arch in order to preserve aesthetic quality of the Arch design involved a policy decision).

### IV.

We conclude the district court did not err in determining that the FTCA's discretionary function exception bars Chantal's claim.  Accordingly, we affirm the judgment of the district court.

Affirmed.

A true copy.

Attest:

---

[7]Plaintiff would distinguish between the preservationist interest in the old fort and the Saarinen design of 1960.  Public access to the fort dates from 1949, however, so the accessibility decisions were made in roughly the same era.  We recognize a preservationist interest in the Arch and its environs.