BYE, Circuit Judge,
dissenting.
The critical question in this case is whether Moechnig’s decisions in formulating a seeding mixture for the Herdens’ pasture were “susceptible to policy analysis.” United States v. Gaubert, 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Because I believe they were, I respectfully dissent.
I agree with the majority’s statement that Moechnig’s role was to “design a seed mixture likely to thrive under ... conditions [unique to a particular pasture, which would] provide benefits in the form of forage for cattle, habitat for wildlife, protection for surface and groundwater, and protection for soil and air quality.” Ante at 472. Further, I agree that “cost effectiveness was also a relevant consideration!,]” and that technical experts such as Moechnig are “given ... policy goals to consider!.]” Id. I disagree, however, with the majority’s claim that Moechnig “was not required to decide, as a policy matter, whether to champion environmental protection in general or on Plaintiffs’ land specifically!,]” and that instead he “was simply required to apply his scientific knowledge to balance pre-defined interests as best he could given the site conditions.” Id. at 472-73.
Specifically, I disagree with the majority’s characterization of Moechnig’s decision-making process as a simple application of his scientific knowledge. Instead, as the majority concedes, Moechnig was attempting to balance pre-defined interests — cattle pasture production, with environmental concerns, with a return on taxpayers’ investment. And while the majority admits the Program’s designers had to consider these “policy and societal issues” when they originally designed the program, Id. at 473, it declines to acknowledge that a grazing specialist such as Moechnig must weigh those same policy considerations when he makes site-specific recommendations. I fail to see how Moechnig’s decision in weighing those predetermined considerations is any less a policy-based choice.
Simply because Moechnig had pre-defined interests to balance does not mean his decision was not policy-based, particularly when those interests compete with each other. The majority contends that any policy considerations — specifically cost — were not at issue in any meaningful way. I disagree.
First, I do not believe cost was the only competing policy interest Moechnig had to consider. The majority concludes that cost is “[t]he factor that most strongly suggests a possible need for policy judgment in the exercise of discretion!.]” Id. at 473. However, I believe we must also recognize that decisions regarding environmental protection, and the methods employed to achieve the best, and most acceptable results to all parties involved, are firmly rooted in policy. See Demery v. U.S. Dep’t. of Interior, 357 F.3d 830, 833 (8th Cir.2004) (stating “decision[s to] ... protect! ] the environment and aquatic habitats [involve] ... obvious issues of policy”).
Second, by not properly acknowledging that decisions concerning environmental protection are firmly rooted in policy choices, the majority fails to recognize that developing cattle pasture and protecting the environment are often competing interests. If the interests were not competing, there would be no need for the EQIP Program. Rather, the Program exists, and the government provides financial and technical assistance to individuals such as the Herdens, in order to incentivize private *476 landowners to emphasize conservation measures. To be sure, environmental protection and pasture production goals can be compatible; if they were completely incompatible, no rational rancher would sign up for the program. For example, in many cases a grazing specialist should be able to choose a particular grass or legume mixture that can provide good forage for cattle, while meeting environmental goals, including wildlife habitat creation and erosion prevention.
On occasion, however, those goals compete with each other. In such a case, the specialist implementing EQIP on the ground — in this case Moechnig — must have the discretion to choose environmental protection over cattle production in order for the program to be worth the government’s significant investments. For example, what should happen if a grazing specialist recognizes a particular pasture to be unusually susceptible to erosion because of exceptionally wet conditions? Under such conditions, the specialist might choose a species more tailored to environmental concerns over another species with higher nutritional content for cattle — a species that could nevertheless survive, but had less potential to stabilize ground conditions. In that case, because the environmental and ranching priorities would be competing, the specialist should — and in this case did — have the discretion to weigh the competing policy goals in formulating a plan best tailored to that particular location, which will meet the needs of all parties on some level. I see this as more than a simple application of technical expertise.
The majority analogizes to Lather v. Beadle County, 879 F.2d 365 (8th Cir. 1989), by comparing Moeehnig’s professional judgment in developing a seeding plan with that of a psychologist’s exercise of medical judgment. But in doing so, the majority only considers the issue of cost as a policy consideration. I recognize virtually any decision involves a cost-benefit analysis on some level. I further agree that cost analysis is not (or should not be) a meaningful part of the psychologist’s decision-making process when she applies her specialized knowledge in treating a patient. See also Fang v. United States, 140 F.3d 1238, 1242-44 (9th Cir.1998) (finding an emergency medical technician’s actions in assisting a victim did not involve a need to balance competing policy concerns; rather, the goal was singular — to aptly assist accident victims). And, if in this case the only policy consideration competing with providing cattle forage was Moechnig’s desire to choose a high enough seed density to ensure proper germination, thus resulting in a good return on taxpayer’s investment, then I may agree with the majority’s ultimate decision.
Yet as I stated above, I do not believe cost was the only policy choice Moechnig faced. Instead, I believe Moechnig’s job required him to balance protecting the environment with providing nutritious cattle forage, while reducing taxpayer cost. This job undoubtedly required Moechnig to draw on his technical expertise in order to determine what seed mixture would thrive under various environmental conditions. But, the fact a specialist needs a technical background in order to develop an appropriate seeding plan, does not mean his decision was not also susceptible to policy analysis. I believe the decisions Moechnig made when he developed the Herdens’ seeding plan were capable of being based in policy considerations, and therefore decisions Congress meant to insulate from suit. See Chantad v. United States, 104 F.3d 207, 212 (8th Cir.1997) (“It is well established that a decision which requires the weighing of competing interests is ‘susceptible to policy analysis’ and typifies the kind of governmental decisions which Congress intended to shield from judicial sec *477 ond-guessing.”) (quoting Gaubert, 499 U.S. at 325, 111 S.Ct. 1267).
Accordingly, I would conclude the discretionary function of the FTCA applies in this case, and affirm the district court.